E. H. KAUFMAN et al., Plaintiffs-Appellees-Cross Appellants, v. 666 NORTH WATER BUILDING CORPORATION et al., Defendants-Appellants-Cross Appellees.

(No. 11184; ▮▮▮▮▮▮▮▮)

Fourth District—February 25, 1971.

Rosenberg, Rosenberg, Bickes & Johnson, of Decatur, (Jos. L. Rosenberg, Wayne L. Bickes, of counsel,) for appellant.

Wilson, Dyar, Houchen & McDonald, of Decatur, (Richard C. McDonald, of counsel,) for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

The trial court's decree quieted title in plaintiffs for purposes of ingress and egress upon described easements and permanently enjoined the defendants from blocking and interfering with plaintiffs' right to use such easements. The defendants, 666 North Water Building Corporation, hereinafter called Building Corporation, and Faries Wire Inc., hereinafter called Faries, appeal.

The easements at issue arise through deeds between three tenants in common exchanged in 1925. As a result of such partition, Lot 5 herein called Tract A. vested in interests which are designated Shellabarger. At the same time, Lot 8 herein designated Tract B, vested in one Thatcher. The third tenant in common, one Maffit, received a Lot 7 adjacent but not contiguous. The parties believe that such Lot 7 is not herein immediately involved. The easements at issue consist of a strip 13 feet in width along the south side of Tract A and a strip 13 feet in width along the north side of Tract B. The strips are contiguous and create a way for ingress and egress of a total width of 26 feet. The provisions creating the easement in Tract A are in the language:

"* * * reserving an easement, however, in a strip thirteen feet wide off the entire South side of said described premises of egress and ingress for driveway purposes to Mary H. Thatcher and Irene T. Shellabarger, their heirs and assigns, provided, however, that upon the payment of Nine Hundred Dollars to the said Irene T. Shellabarger, her heirs or assigns, and said strip being permanently closed, all her right, title and interest in and to said easement, including a similar easement in a strip of the same dimensions immediately South of the strip herein reserved and contained in a conveyance this day made by the said Irene T. Shellabarger and Alice Neta T. Maffit to Mary H. Thatcher, shall be extinguished and this reservation of no effect * * *"

The deed between the tenants in common creating an easement in Tract B is in the following language:

"* * * reserving an easement, however in a strip thirteen feet wide off the entire North side of said described premises of egress and ingress for driveway purposes to Alice Neta T. Maffit and Irene T.

Shellabarger, their heirs and assigns, provided, however, that upon the payment of Nine Hundred Dollars to the said Irene T. Shellabarger, her heirs or assigns, and said strip being permanently closed, all her right, title and interest in and to said easement, including a similar easement in a strip of the same dimensions immediately North of the strip herein reserved and contained in a conveyance this day made by the said Irene T. Shellabarger and Mary H. Thatcher to Alice Neta T. Maffit, shall be extinguished and this reservation of no effect. * * *"

As a result of such reciprocal deed provisions, there was created: (1) an easement appurtenant to Tract A, i.e., a 13 foot strip along the north side of Tract B, with a like servitude in a strip of 13 feet along the south side of Tract A; (2) an easement appurtenant to Tract B, i.e., a strip 13 feet wide along the south side of Tract A with a like servitude upon a strip 13 feet wide along the north side of Tract B.

In the brief and arguments the easement appurtenant to Tract A and a servitude upon Tract B is called the "south strip", while the easement appurtenant to Tract B and the servitude upon Tract A is called the "north strip". We will use the same designations.

Defendants state the issues to be: (1) whether an easement was created in the "south strip" by the deeds in 1925; (2) whether the easement in the "north strip" was extinguished by merger; (3) whether the easements created by the deeds in 1925 were extinguished by operation of the terms of such deeds.

The trial court filed a memorandum reflecting his determination that the deeds of the tenants in common in 1925 created reciprocal easements appurtenant to Tract A and Tract B. Such memorandum suggests that the defendants below argued that the easements were in gross, but such issue is not raised here. The court further noted that the stipulation of the parties showed that there was no complete and co-extensive ownership of the dominant and servient interests so that there was no merger of such interests as would extinguish the easement of the plaintiffs. The court further determined that the easements were not extinguished by operation of law or by the acts of the parties in interest, and hence the easements were not terminated pursuant to the conditions in the deeds of the tenants in common in 1925.

The devolution of title in the respective parcels is significant. As to Tract A, Shellabarger retained title from 1925 until November 1, 1952, when title passed to defendant, North Water. As to Tract B, the original grantee, Thatcher, conveyed a portion of Tract B, herein designated Tract B-1, to one McNeil in 1942. Tract B-1 was the northerly portion of Tract B and the entire servient estate in favor of Tract A was along the north side of Tract B-1. The conveyance of McNeil was made ex-

pressly subject to the easement in favor of Tract A. Tract B-1 was conveyed to defendant Faries on September 1, 1960.

In the conveyance of Tract B-1 to McNeil, Thatcher reserved an easement of the dimensions of 18 feet by 48 feet on the west end of Tract B-1 to be used by the grantor Thatcher, "in common with grantees for purposes of ingress and egress."

In 1947, the remaining portion of Tract B, herein called Tract B-2, was conveyed to Shellabarger. The latter conveyed Tract B-2 to one Kaiser on August 28, 1952. Plaintiffs are the grantees of Kaiser.

Defendants argue that the deed in 1942 whereby Thatcher conveyed Tract B-1 to McNeil contained no reservation of interest in the easement at issue for the benefit of Tract B-2, although another easement was created by such deed, and that the deeds in partition do not provide a reservation of mutual use to the 26 feet of way. In *Beloit Foundry Co. v. Ryan*, 28 Ill.2d 379, 192 N.E.2d 384, the Supreme Court stated an easement is a right or a privilege in the real estate of another, and when exercised in connection with the occupancy of other land it is said to be appurtenant thereto. Ordinarily such an easement is appurtenant not only to the dominant tract as a whole, but also to each and every part thereof, and it is not extinguished by division of the dominant estate but thereafter enures to the benefit of the owners of the several parts. An easement appurtenant passes by conveyance of the land to which it is annexed and the servient estate continues to be subject thereto until such right is terminated or abandoned. There is no requirement that the dominant estate resulting from such division touch or join the servient estate where both are clearly defined. See also *Wetmore v. Ladies of Loretto, Wheaton*, 73 Ill.App.2d 454, 220 N.E.2d 491.

■■ Under the facts and authorities the deeds between the tenants in common in 1925 created easements appurtenant with accompanying servitudes in Tracts A and B. Upon Thatcher's conveyance of Tract B-1 to McNeil in 1942, both Tract B-1 and the retained parcel, Tract B-2, were dominant estates, each having an easement appurtenant over Tract A. The servitude created in Tract B by the easement appurtenant in Tract A remained.

■■ Defendants argue that there was a merger of the dominant and servient estates by reason of the fact that Shellabarger owned Tract A, and from 1947 to 1952 owned Tract B-2. The decree below found that there had never been complete and co-extensive ownership of the dominant and servient estates in one person, i.e., Shellabarger, and that neither the easements nor any part thereof had been extinguished by merger. In his memorandum, the trial court noted that such conclusion was found from the terms of the stipulation. We agree.

In *Village of Lake Bluff v. Dalitsch*, 415 Ill. 476, 114 N.E.2d 654, the court said: "It is settled law that where there is a unity of title to and possession of the dominant and servient estates in the same owner, that fact operates to extinguish the servient estate absolutely and forever." In that case the prescriptive easement of the Village over a way was extinguished when such was conveyed to the Village by dedication.

The rationale of the rule may be determined from the *Restatement of the Law of Property*, Vol. 5, *Servitudes*, § 497. Such section provides: "An easement appurtenant is extinguished by unity of ownership of estates in the dominant and servient tenements to the extent to which the uses which could have been made prior to the unity by virtue of ownership of the estate in the dominant tenement can be made after the unity by virtue of ownership of the estate in the servient tenement." In such statement an "estate" by definition is an interest in land which is, or may become, possessory.

In stating the rationale of the rule, it is said: "If the two tracts come into common ownership they cannot continue to be dominant and servient, and the easement appurtenant ceases to exist because, though the privileges of use once authorized by it still exist, they are no longer incidental to the ownership of the dominant tenement but have become incidents of the ownership of what was formerly the servient tenement."

The record discloses that from 1942 to 1960 Tract B-1 was owned by McNeil subject to the servitude imposed on the "south strip" along the north side of such parcel. Shellabarger's use of the way during the years 1947 to 1952 was by reason of the easement appurtenant to Tract A and the servitude on Tract B-1 which was owned by McNeil. Within the rule no merger resulted by reason of Shellabarger's ownership of Tract A and Tract B-2.

■■ The trial court found that the easement had not been extinguished by the acts of the parties entitled to extinguish such easements by reason of the provisions of the deeds in 1925, and that the conditions contained in the language of such deeds creating easements had not occurred. Again, we agree.

Defendants argue that by the deed of Shellabarger to defendant, Building Corporation, dated November 2, 1952, Shellabarger assigned all claim and interest in the sum of $900.00 provided to be paid to Shellabarger upon the closing of the easement, and that Building Corporation, having such assignment, need not pay the money to itself. It is further argued that the easement has, in fact, been closed.

We have concluded that when Thatcher conveyed Tract B-1 to McNeil in 1942, the benefits of the easement across Tract A continued in Tract B-2 which Thatcher retained. Such easement appurtenant to Tract B-2

passed to one Kaiser by deed of Shellabarger dated August 28, 1952, and thereafter to plaintiff. In *Beloit Foundry Co. v. Ryan*, 28 Ill.2d 379; 192 N.E.2d 384, the court stated that where an easement is created by grant it must be shown that the dominant owner intended to relinquish the easement. There is no contention that either Kaiser or plaintiff has evidenced any such intention.

The trial court concluded that the words of the deed portion, "permanently closed" as a physical closing were not synonymous with "permanently extinguished" in the sense of extinguishment by operation of law or by the acts of the parties.

The defendant, Building Corporation, purchased Tract A from Shellabarger on November 1, 1952, some two months after the rights in the easement appurtenant in favor of Tract B-2 had vested in Kaiser, plaintiff's predecessor in title. The deed from Shellabarger to Building Corporation was expressly subject to the easement over Tract A as reserved in the deeds creating such title.

We refuse to hold upon these facts, or as a matter of law, that the grantor, Shellabarger, can, by subsequent deed and the assignment in issue, authorize the grantee, Building Corporation, to terminate the rights of easement vested under a prior deed to plaintiffs' predecessor in title.

As a matter of fact, defendant, Building Corporation, did not purchase Tract A in the posture that the easement had been terminated by operation of the conditions in the deeds creating the easement. The deed from Shellabarger to Building Corporation was expressly subject to the easement on Tract A. The language of assignment of the sum of $900.00 theretofore provided as payable to Shellabarger was in the language: ". . . *in the event* that the said easement so reserved . . . *is terminated* and the strip of land for such easement was or is closed . . ." (Emphasis supplied.) This grantor further assigned to Building Corporation the easement created over Tract B-1 and assigned the sum of $900.00 payable to Shellabarger:

". . . in the event such strip or right of way is permanently closed all as provided for in the last referred to deed."

Under these circumstances we do not need to consider whether the deeds in partition of 1925 created an easement in gross for the benefit of the adjacent lot conveyed to the tenant in common, Maffit.

■■ A further consideration supporting the views expressed herein arises from the holding of the Supreme Court that where the owner or owners of land have provided an "arrangement" whereby one or more portions of the land derived benefits from the other portions, upon serverance the easements and servitudes which correspond with the benefits and ap-

purtenants existing at the time of sale are taken by the purchaser. *Beloit Foundry Co. v. Ryan,* 28 Ill.2d 379, 192 N.E.2d 384; *Frantz v. Collins,* 21 Ill.2d 446, 173 N.E.2d 437, and *Sheehan v. Sagona,* 13 Ill.2d 341, 148 N.E.2d 795. The facts of this case seem almost a classical example of such an "arrangment" provided by the tenants in common in 1925. This stated policy is not to be eroded by needlessly construing provisions so as to permit one or more purchasers to extinguish for their sole benefit all of the benefits of another purchaser. The purchaser of Tract B-1, Faries, in 1960, does not aid any power of the defendant, Building Corporation, to extinguish the easement.

Plaintiffs cross-appeal from a portion of the decree which required plaintiffs to remove a section of a loading dock theretofore constructed upon the land of the defendant, Faries. The decree shows that evidence was taken upon the issues raised in the pleadings, but neither an abstract nor excerpts of such testimony are submitted. There is nothing to be reviewed and we do not search the record to reverse.

The decree of the trial court is affirmed.

Decree affirmed.

SMITH, P. J. and CRAVEN, J., concur.