EDWARD L. KLOPF, JR., *et al.*, Plaintiffs-Appellees, *v.* THE ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellants.

Second District    No. 76-326

Opinion filed November 15, 1977.

492

William J. Scott, Attorney General, of Chicago (Karl Yost, Assistant Attorney General, of counsel), for appellants.

Roth & Elliott, of Galena, and Michael W. Payette, Richard M. Freeman, and George M. Hollander, all of Chicago, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

This appeal is concerned with the disposition of 32 miles of former right-of-way owned by the Chicago and North Western Transportation Company, a railroad public utility. After hearings, the Illinois Commerce Commission determined that the purported sale of the property to representatives of landowners adjoining it without prior Commission approval was void. The Commission refused to approve that sale and, further, authorized the Illinois Department of Conservation to seek to acquire a portion of the property by purchase or condemnation. On appeal to the circuit court the decision of the Commission was reversed and this appeal followed.

Defendants-appellants are the Commerce Commission and the Illinois Department of Conservation. Plaintiffs-appellees are Edward L. Klopf, Jr., Haldor Schap, Gordon Hatfield, Galena State Bank & Trust Company and C.N.A. Abandonment Limited, all of whom are or represent the adjoining landowners of the disputed property. A brief amicus curiae has been filed by Chicago and North Western Transportation Company as owners of the property.

The common interest of these parties and the subject of this litigation is

the acquisition of 32 miles of former railroad right-of-way owned by North Western but no longer required by it for its railroad purposes. The Department of Conservation seeks to acquire approximately 19 miles of the property located in Jo Daviess County for public use as a nature trail and for related activities. Plaintiffs seek to acquire all 32 miles of the property to add to the present holdings of the adjoining landowners or for sale to other interested persons.

In 1972 the Interstate Commerce Commission authorized North Western to abandon railway operations by it on approximately 83 miles of right-of-way extending generally from Byron in Ogle County, Illinois, to Dubuque, Iowa. The 32-mile strip of property some 100 feet in width, with which this case is concerned, is located in Jo Daviess County, Illinois, running approximately between Woodbine and Galena Junction. Upon learning of the abandonment, adjacent landowners of the property organized, calling themselves C.N.A. Abandonment, Ltd., and sought to purchase the property from North Western. The Department of Conservation also expressed some early interest in 1972 in acquiring the land and North Western did then give the Department priority in making an offer to purchase extending to March 14, 1973. The Department did not within that period submit to North Western any offer to purchase the property.

In February 1973, however, C.N.A. did submit to North Western its offer to purchase the 92 parcels of land comprising the 32-mile stretch of right-of-way in Jo Daviess County for the sum of $123,625. The offer stipulated that the seller would be permitted to reserve an easement in the land for the construction and maintenance of pipelines below the surface of the ground over the length of the property. This offer was also conditioned upon the approval of the sale by the Illinois Commerce Commission and on that basis was accepted by North Western on March 15, 1973, at an adjusted price of $121,625 for the abandoned right-of-way. Subsequently, North Western filed a petition with the Commission requesting it consent to and approve the proposed sale to C.N.A. on behalf of the adjoining landowners.

On September 7, 1973, while the petition was pending for hearings before the Commission, the Department of Conservation announced its renewed interest in acquiring 19 miles of the right-of-way to convert to a nature trail for use by the public. Thereupon, on September 20, 1973, at the direction of C.N.A., the Galena State Trust & Savings Bank paid over the agreed purchase price to North Western and North Western executed a single deed for the 92 parcels of land to one Larry R. Kramer of Galena, a nominee of C.N.A. In November 1973 Mr. Kramer conveyed all of the property to the Galena State Bank, as trustee, by a single deed and the bank-trustee on November 13, 1973, began to deed parcels of the

property out to the adjoining landowners, and others, at the direction of C.N.A. representatives.

On November 15, 1973, the Department of Conservation submitted a written offer to North Western to purchase the fee title in 19 miles of the right-of-way in Jo Daviess County for $132,500. Upon being then informed by North Western that it could not entertain the offer because it had already sold the property to C.N.A., subject to Commission approval of that sale, the Department filed its petition with the Commission requesting permission to institute condemnation proceedings against North Western as is required by the Eminent Domain Act (Ill. Rev. Stat. 1973, ch. 47, par. 2) before such action may be commenced against a railroad or other public utility. Hearings were conducted by the Commission on the Department's petition and North Western's earlier petition and they were consolidated for decision. The Commission entered its order on May 15, 1975, finding that the sale of the land by North Western to the nominee of C.N.A. without prior Commission approval was void and denied approval of the proposed sale. It further granted the petition of the Department and authorized it to acquire by purchase or condemnation title to the 19 miles of abandoned right-of-way desired by it for public use.

On appeal by plaintiffs the Circuit Court of Jo Daviess County reversed the orders of the Commission finding that the conclusions of the Commission were against the manifest weight of the evidence and contrary to law. This appeal by the Commission and the Department of Conservation followed.

The issues requiring resolution are: (1) was the sale of the railway property described herein subject to the approval of the Commerce Commission or had it been waived; (2) did the Commission exceed its authority in granting the Department of Conservation permission to condemn the property for public use rather than approving the sale of the land for private use; and (3) has private property of the adjoining landowners been taken for public use or damaged without just compensation.

Section 27 of the Public Utilities Act (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 27) provides that the sale of property of a public utility is void "[u]nless the consent and approval of the Commission is first obtained or unless such approval is waived by the Commission * * *." The Act further provides that the Commission may by general rule waive the necessity of securing its approval for the sale of property involving a consideration of not more than $50,000 and the record of this case demonstrates the Commission has adopted such a waiver rule. Plaintiffs contend the sale of North Western's right-of-way shown in this case was

actually multiple sales of the 92 parcels of land for sums not exceeding $7,000 each and, therefore, did not require Commission approval.

As plaintiffs suggest, the adjoining landowners were the initial intended beneficiaries of C.N.A. Abandonment, Ltd., and the trust established in the Galena State Bank which acquired title to the property through this organization. Plaintiffs caused to be paid to North Western the $121,625 purchase price for the land and their nominee took title to all of it by a single deed. Title ultimately was placed with the trustee which then conveyed at least 70 parcels of the land to certain adjacent property owners and others in early November 1973. Plaintiffs urge that it be understood the transaction was handled in this manner solely for the benefit and at the insistence of the railroad so that North Western would not have to deal with the adjoining owners of all 92 parcels of property with the attendant expenditure of time and costs.

■■ We do not agree, however, with the conclusion drawn by plaintiffs that the Commission approval mandated by the statute may be avoided in these circumstances and find that the Commission correctly determined there was an attempted sale exceeding the statutory jurisdictional amount and, therefore, subject to its approval. Certainly, both North Western and plaintiffs were initially aware that their contemplated transaction required Commission approval. The record establishes that plaintiffs were informed at an early stage, before commencing any of the activities we have described, that prior approval of the Commission was not only necessary, but that a sale without such approval was void. Their concern over losing the land when the acquisition plans of the Department of Conservation were announced apparently precipitated plaintiffs' actions. North Western, of course, entertained few doubts on this score; it promptly filed its petition with the Commission requesting approval of the sale to plaintiffs as it knew it must do.

We are also mindful that the evidence discloses that persons other than those described as adjoining landowners have acquired parcels of the disputed land from the trustee. Under the initial arrangement made by those who organized C.N.A. it appears there were four persons from among them who were given authority and power of direction, without substantial limitation, over the actions of the trustee towards the property. There was testimony by the trustee that not all conveyances were made to the adjoining landowners; he estimated that 90% were so sold but that the remainder of the sales were to other persons who were not in the original category. The record does not disclose what interest these purchasers had in acquiring a portion of the railway right-of-way. This factor simply suggests the original concept underwent changes as time passed and what

commenced as a kind of accommodation transaction between the railroad and its neighbors may have developed into another kind of enterprise.

The fact remains, however, that the sale attempted by these parties was for a consideration in excess of $50,000 to one person, Larry R. Kramer. That Mr. Kramer intended and substantially did further transfer the property so that eventually the cost would be spread among a sufficiently large number of owners as to lower the average cost to each of them below the jurisdictional amount is of little consequence. The theory relied upon by plaintiffs would be equally applicable to a million dollar sale of property, without Commission approval, to a subdivider who thereafter resells parcels of it to others for sums not exceeding $50,000 each so as to avoid the consideration of the sale by the Commission as required by the statute. We may not repeal the control over property sales of a utility placed with the Commission by the Public Utility Act through such a tenuous construction. The Commission had jurisdiction to consider the proposed sale in issue and had not waived that duty through its $50,000 limitation.

Plaintiffs next contend, as does the amicus curiae brief filed on behalf of North Western, that the limited purpose of section 27 of the Public Utilities Act in requiring Commission approval of property sales by a public utility is to assure that the property is no longer needed for utility purposes and that the utility is to receive a fair market price for it. They argue that beyond these determinations, the Commission had no authority to consider other matters, such as whether the public interest would best be served if property no longer needed by the utility might be made available for another public use and conclude, as did the circuit court, that the Commission exceeded its authority in not approving the sale to plaintiffs.

In considering whether a proposed sale of utility property will be approved, the Commission is charged by section 27(i) to conduct hearings, and, thereafter,

"[I]f the Commission is satisfied that such petition should reasonably be granted, and that the public will be convenienced thereby, the Commission shall make such order in the premises as it may deem proper and as the circumstances may require * * *."
(Ill. Rev. Stat. 1973, ch. 111 2/3, par. 27(i).)

The construction of section 27 urged by plaintiffs and amicus is not easily drawn from the provisions of the Public Utilities Act which give the Commission broad powers of supervision and regulation over utilities. These functions of the Commission are authorized to assure both that the public is adequately served and that the utility receives a reasonable return for the service it renders. Our supreme court has noted:

"The Public Utilities Act [citation], under which the Commerce

Commission regulates all public utilities, was enacted to assure the provision of efficient and adequate utility service to the public at a reasonable cost. Because unrestrained competition prior to the adoption of the Act had often resulted in the financial failure of many utilities, the Act adopted a policy of regulated monopoly to assure that utilities would be able to earn a reasonable rate of return on their investment and thus would be able to provide the required service. [Citations.]" *Local 777, DUOC, Seafarers International Union of North America v. Illinois Commerce Commission* (1970), 45 Ill. 2d 527, 535, 260 N.E.2d 225, 229.

■■ Plaintiffs' contentions here were among those considered by the First District in an earlier case brought by this same railroad against the Commerce Commission. In *Chicago & North Western Ry. Co. v. Illinois Commerce Commission* (1970), 130 Ill. App. 2d 352, 264 N.E.2d 745, North Western argued that section 27 does not confer jurisdiction upon the Commission to control the sale of property of a public utility within the State of Illinois where such property is no longer needed for its utility purposes. In rejecting the argument the court noted that:

"The Railroad further argues that if section 27 is construed to include real estate, it includes all real estate owned by a public utility; that since not all such real estate is necessary or useful in the performance of its duties to the public, the public utility should not be required to seek Commission approval of transactions of real estate which is neither necessary nor useful in the performance of its duties to the public. The Railroad contends that if section 27 is construed to include real estate, 'the legislature failed to make allowance for real estate not devoted to the public utility business and as a result it has restricted the use and enjoyment of such real estate. The restriction is without reason and foundation and arbitrary.' The Railroad even argues that such restriction is in violation of section 2 of Article 2 of the State Constitution, providing that 'no person shall be deprived of life, liberty or property, without due process of law.'

The Railroad fails to take into consideration that if there were no Commission control the decision as to whether retention of any particular real estate were necessary or useful to the public would be left entirely in the hands of the Railroad. In other words, the argument presumes that the property in question is not affected in the public interest, the very essence of what is to be properly determined by the Commission. We think that before the Railroad can make the argument it here seeks to assert, it would need to have received a ruling from the Commission that the property was in no way affected with the public interest, but that the

Commission was still going to withhold approval. That, of course, is not the present situation." 130 Ill. App. 2d 352, 363-64, 264 N.E.2d 745, 752.

That court further noted that in considering whether a proposed sale of property by a public utility ought to "reasonably" be granted that "[t]he Commission, however, has been given one constant factor to consider; namely, that the public will be convenienced by the approval of a particular transaction under its consideration. Once it is satisfied that such is the case, and that the particular transaction should reasonably be granted it will give its approval." 130 Ill. App. 2d 352, 361-62, 264 N.E.2d 745, 751.

In the instant case the Commission made findings of fact in its order which are sufficient to enable us to review its decision and to determine whether it is supported by the evidence. (See *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1973), 55 Ill. 2d 461, 472, 303 N.E.2d 364, 370.) It had before it North Western's petition for approval of the sale of the 32 miles of right-of-way to plaintiffs for $121,625 and reserving to North Western a pipeline easement. The Commission also had before it the request of the Department of Conservation to be permitted to seek to acquire just 19 miles of the land in fee, by purchase or condemnation, for public use and noted the Department had offered to pay $132,500 for the portion in which it was interested leaving some 13 miles available for sale to the adjoining landowners or others for additional consideration to the utility. The Commission further recognized in its order that should the sale of the land to plaintiff's nominee be approved the Department of Conservation could still condemn that portion of the right-of-way it seeks to acquire. It determined, however, that to require the Department to proceed against the many individual owners in order to acquire title to 19 miles of land divided into numerous parcels would result in a multiplicity of actions, would substantially increase costs and would not serve the public interest. The Commission expressly found the public interest to be better served if it approved the Department's petition and it did so. Necessarily, then, the Commission also denied approval of North Western's petition and declared the deed by it conveying the property to plaintiffs to be void as section 27 required.

■■ In reviewing decisions of the Commerce Commission courts will hold its findings and conclusions on questions of fact to be prima facie correct and will not set aside an order of the Commission unless it is clearly against the manifest weight of the evidence presented to the Commission. (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 72; *United Cities Gas Co. v. Illinois Commerce Com.* (1971), 48 Ill. 2d 36, 39, 268 N.E.2d 32, 34; *Citizens Utilities Co. v. Illinois Commerce Com.* (1971), 50 Ill. 2d 35, 39, 276 N.E.2d 330, 332.) The Commission's refusal to approve North

Western's petition is supported by the evidence of the substantially greater return to the utility made possible by the Department of Conservation's offer of $132,500 for only 19 miles of right-of-way leaving the balance for private sale by the railroad. We recognize North Western's argument that retention of the pipeline easement affects the relative value of the offers made but, as noted by the Commission, there is no evidence in the record indicating specific details relative to pipeline construction in the right-of-way nor is there any evidence the Department would preclude construction of such a pipeline if it acquired the right-of-way it seeks.

■■ We further find the evidence to support the conclusion of the Commission that the property in question is affected with a public interest although no longer required for the specific purposes of this railroad utility. The record discloses the right-of-way which the Department wishes to preserve for general public access is unique and eminently suitable for use as a nature trail and for related activities. This land has been applied to a limited public purpose since it was first acquired, by grant or purchase, for railway purposes. While it can easily be understood why the adjoining landowners would prefer the property revert to them rather than be applied to general public use, the test which must be considered by the Commission is whether under the evidence the petition should reasonably be granted and whether the public will be convenienced thereby. We cannot say the order of the Commission denying approval of North Western's petition was against the manifest weight of the evidence presented or contrary to the authority granted to the Commission by the legislature.

Plaintiffs' final contention is that their property is being taken by the Department in conjunction with the Commission for public use without just compensation. The thrust of this argument appears to be that plaintiffs, and those who acquired parcels of the land through North Western's deed, have made substantial changes and alterations in the right-of-way since it was transferred to them and that the State of Illinois should be required to bring eminent domain proceedings against them individually to ascertain by jury their just compensation for such improvements, as provided by the Eminent Domain Act (Ill. Rev. Stat. 1973, ch. 47, par. 1). We find no merit to this contention in this case.

■■■ Plaintiffs appear to misconceive the effect of the order of the Commission as it relates to authorizing the Department of Conservation "to acquire by purchase or eminent domain" title to the 19-mile stretch of right-of-way in which it is interested. The Commission by its order did not exercise any condemnation authority over the land but simply authorized the Department of Conservation to proceed in court with such an action if that becomes necessary. In such an action the issues of just

compensation of the owner of the land would be ascertained as in the case of any exercise of the power of eminent domain. We note, however, based upon the record before us, that those adjoining landowners and others who sought to acquire an interest in the right-of-way through the void deed by North Western to Mr. Kramer have no standing to seek compensation for improvements they may have made. They knowingly and with direct advice as to the consequences assumed control over the property and may not now be compensated by the State of Illinois for any volunteered improvements.

For the reasons we have discussed, the judgment of the Circuit Court of Jo Daviess County is reversed.

Reversed.

BOYLE and SEIDENFELD, JJ., concur.