THE VILLAGE OF HILLSIDE, Plaintiff-Appellant, *v.* THE ILLINOIS COMMERCE COMMISSION, Defendant-Appellee.—(Commonwealth Edison Company *et al.*, Intervening Defendants-Appellees.)

First District (5th Division)   Nos. 81—2656, 81—2657 cons.

Opinion filed December 10, 1982.

Schain, Burney and Kenny, of Chicago (Jerome S. Schain and Thomas R. Burney, of counsel), for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Hercules F. Bolos and Edward P. O'Brien, Assistant Attorneys General, of counsel), for appellee Illinois Commerce Commission.

Laurence D. Lasky, Paul F. Hanzlik, and Sarah H. Steindel, all of Chicago (Isham, Lincoln & Beale, of counsel), for appellee Commonwealth Edison Company.

Kirkland & Ellis, of Chicago (Daniel W. Vittum, Jr., Frank L. Winter, and Donald W. Rupert, of counsel), for John Sexton Sand & Gravel Corporation and Browning-Ferris Industries, Inc.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

These consolidated appeals are from the trial court's affirmance of two orders entered by the Illinois Commerce Commission (Commission) (1) approving Commonwealth Edison Company's (Edison) petition to sell Hillside Stone Quarry (Quarry) to John Sexton Sand and Gravel Corporation (Sexton) and Browning-Ferris Industries, Inc.

(Browning-Ferris); and (2) determining that Edison had not violated section 27 of the Public Utilities Act (the Act) (Ill. Rev. Stat. 1979, ch. 111⅔, par. 27). Plaintiff contends (a) the order approving sale of the Quarry is against the manifest weight of the evidence because Edison failed to establish either that the sale served the public interest or that the proposed sale price reflected the fair market value of the land; and (b) the finding that Edison did not violate the Act is against the manifest weight of the evidence when Edison, without prior approval, transferred permits to Sexton, granted possession of the Quarry to Sexton, and effectuated a lease of the Quarry.

The Quarry, which is the subject matter of these proceedings, occupies approximately 75 acres of land adjacent to the intersection of the Eisenhower Expressway and Mannheim Road in the village of Hillside, Illinois. It was created by limestone mining, and an excavation covers about 62 of the 75 acres to a depth of 300 feet. Edison purchased the Quarry for $8,001,839 on August 12, 1976, for use as a fly ash and combustion byproduct disposal site. Because of additional development expenditures, the total original cost of the property was $11,675,994. Shortly after acquiring the Quarry, Edison determined that it would not need the entire site and began looking, without success, for a purchaser who would permit Edison to use a portion thereof for its disposal needs.

Upon further consideration of its requirements. Edison concluded that it was uneconomical to use any part of the Quarry to dispose of waste materials. When no alternative use in Edison's business could be found, the Quarry was declared excess in July 1978 and offered for sale at $12,000,000. There were several inquiries, but only two offers to purchase were received—both from companies that planned to use the Quarry as a sanitary landfill; i.e., to dump garbage and inorganic matter. The first offer came from Sexton, but was rejected. Thereafter, an offer from Waste Management, Inc., was also rejected because the price and payment terms were even less attractive than Sexton's initial offer.

Negotiations were conducted with both Sexton and Waste Management until November of 1978, when Edison and Sexton reached a tentative agreement on price. While the parties continued their negotiation of other terms, Sexton requested access to the property to do some work in anticipation of its purchase, and Edison granted a right of entry on November 16, 1978, later modified by letters dated December 14, 1978, and December 4, 1979.

On May 7, 1979, Edison executed a contract for sale of the Quarry to Sexton and Browning-Ferris for $9,550,000. Two days later

it also joined in Sexton's permit application requesting that the Illinois Environmental Protection Agency (EPA) transfer to Sexton permits held by Edison to develop the Quarry as a clean landfill; *i.e.*, a dumping site for only inorganic matter. The EPA transferred these permits to Sexton on August 14, 1979.[1]

Edison filed a petition with the Commission on May 24, 1979, pursuant to section 27 of the Act (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 27), seeking approval of the sale to Sexton and Browning-Ferris. While this petition was pending, plaintiff brought to the Commission's attention various alleged violations of the Act by Edison. In particular, plaintiff asserted that Edison, without the prior approval and consent of the Commission, transferred property rights and a right of entry to Sexton; petitioned the EPA for transfer of its permits to Sexton; provided in its contract for a lease that commenced on November 7, 1979; and permitted Sexton to engage in work activities beyond those contemplated in the right of entry agreements.

In response to these allegations, the Commission entered a citation order on February 20, 1980, requiring Edison to appear and show cause why it should not be found in violation of section 27 of the Act. A hearing was held for the taking of oral and documentary evidence, and both Edison and plaintiff submitted written briefs. On July 16, 1980, the Commission dismissed the citation order, finding that Edison had not violated the Act. Plaintiff's application for rehearing was denied on August 27, 1980.

Fifteen days of hearings were held between June 19 and September 21, 1979, on Edison's petition for approval of its sale of the Quarry. Sexton and Browning-Ferris participated in these proceedings by leave of the Commission, pending approval of their petition to intervene,[2] and after all parties submitted written briefs and reply briefs, the Commission on July 16, 1980 issued an order approving the proposed sale.

Thereafter, pursuant to section 68 of the Act (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 72), plaintiff filed appeals in the trial court seeking review of the order finding no violation of the Act and the order ap-

---

[1]The EPA's actions were the subject of an appeal before this court. (*Village of Hillside v. John Sexton Sand & Gravel Corp.* (1982), 105 Ill. App. 3d 533, 434 N.E.2d 382.) Subsequent permit grants for use of the Quarry as a sanitary landfill are currently before us in a separate appeal. Village of Hillside v. John Sexton Sand & Gravel Corp., appeal docketed, No. 81—2655.

[2]The petition was subsequently granted in the July 16, 1980, order approving the sale of the Quarry to Sexton and Browning-Ferris.

proving sale of the Quarry to Sexton and Browning-Ferris. Both were affirmed by that court on October 2, 1981, and these appeals followed.

OPINION

Plaintiff initially contends that the Commission order approving sale of the Quarry to Sexton and Browning-Ferris was contrary to the manifest weight of the evidence because (a) it fails to give proper weight to the convenience and necessity of the community surrounding the Quarry in balancing the interests of Edison against the public interest and (b) the approved purchase price did not represent the fair market value of the property.

We first consider, however, the question raised by Edison as to whether those contentions are moot because reversal of the Commission's order could not cause a change in the current ownership of the Quarry. Once having received Commission approval, Edison maintains that it could lawfully proceed with the sale even though an appeal was pending. Therefore, since it conveyed title to Sexton and Browning-Ferris on July 24, 1980, it argues that plaintiff's failure to obtain a stay pending appeal has made the propriety of the Commission's order irrelevant.

Edison relies on *Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, 117 N.E.2d 774, in support of its argument. There, the defendant charged freight rates which had been approved by the Commission. The order finding the rates just and reasonable was subsequently reversed, and plaintiff sought recovery of allegedly excessive charges made while the new rates were in effect. The supreme court held that while the order was in effect, defendant was required by statute to charge those rates in the absence of a stay, and it thus could not be said that defendant charged an excessive rate, since it merely charged what was required by law.

We find *Mandel Brothers* inapplicable, as it dealt with the propriety of utility action pending appeal; whereas, here, we are concerned with whether reversal could return the parties to the status quo. We note also that in *Mandel Brothers* the reversal of the Commission's order did result in reinstatement of the former rates, thus effecting a return to the status quo. Moreover, plaintiff's inability to recover was mandated by statute in *Mandel Brothers*, a circumstance not present in the case at bar.

Furthermore, the rate-making function of the Commission is inherently different from its function in approving dispositions of property under section 27 of the Act. Rate making involves establishment

of rules which will be in effect over a period of time; thus, effective relief may be granted from an erroneous order. However, if we apply the holding in *Mandel Brothers* to cases arising under section 27, review in most cases could be frustrated by prompt action on the part of the utility following Commission approval, thereby rendering the statutory mechanism for judicial review of agency decisions meaningless.

For the foregoing reasons, we decline to apply *Mandel Brothers* to the instant action and must turn instead to the cases dealing with mootness, in the absence of any statutory standard to the contrary.

■ The failure to obtain a stay pending appeal does not, of itself, render an issue moot (*Schaumburg State Bank v. Seyffert* (1979), 71 Ill. App. 3d 630, 390 N.E.2d 388); however, when supervening events make it impossible for a reviewing court to grant effective relief to any party, the issue is moot (*Panduit Corp. v. All States Plastic Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 405 N.E.2d 1316), since any finding made on the issue can have no practical legal effect on the controversy (*Betts v. Ray* (1982), 104 Ill. App. 3d 168, 432 N.E.2d 1222). Thus, in the instant action, the issue is moot only if we cannot order a return to the status quo; *i.e.*, a return of the Quarry to Edison and divestment thereby of the title currently held by Sexton and Browning-Ferris.

■ Sexton and Browning-Ferris, having been parties to all of the agency proceedings in question and to the initial review thereof before the trial court, were aware of the controversy surrounding the Commission order, as well as of the instant appeal. While we know of no cases dealing with the rights of parties participating in an agency hearing pursuant to section 27 of the Act, we find their position analogous to that of a party to a lawsuit wherein a property interest is at issue. In that situation, "[a] party to a suit *** cannot acquire any rights or interests based on [an] erroneous decree that will not be abrogated by a subsequent reversal thereof." (*First National Bank v. Road District No. 8* (1945), 389 Ill. 156, 161-62, 58 N.E.2d 884, 887; accord, *Schaumburg State Bank v. Seyffert* (1979), 71 Ill. App. 3d 630, 390 N.E.2d 388.) Similar reasoning is applicable to both situations. One who is a party to proceedings before an administrative agency, just as a litigant in a lawsuit, is presumed to know all errors in the record. Armed with such knowledge, he proceeds at his own risk, taking his chances that the order will be reversed. Therefore, even in the absence of a stay pending appeal, a disposition of property made pursuant to an order of the Commission subsequently reversed does not render the issue moot when the purchaser was a party to the agency

proceedings.[3]

Furthermore, we find this result consonant with the purpose of the Act. It is the duty of the Commission to assure that efficient and adequate utility service is provided to the public at a reasonable cost. (*Local 777, DUOC, Seafarers International Union of North America v. Illinois Commerce Com.* (1970), 45 Ill. 2d 527, 260 N.E.2d 225.) When the Commission issues an order which is contrary to the manifest weight of the evidence, it has in a sense failed to protect the public interest, which requires that we take jurisdiction to correct that order unless it clearly appears that reversal thereof would be a useless act.

Having determined that the issue is not moot, we turn to consideration of plaintiff's contention that the Commission's approval of the sale was contrary to the manifest weight of the evidence.

Section 68 of the Act (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 72) provides that "[t]he findings and conclusions of the Commission on questions of fact shall be held prima facie to be true and as found by the Commission; and a rule, regulation, order or decision of the Commission shall not be set aside unless it clearly appears that the finding of the Commission was against the manifest weight of the evidence ***." The Act further provides that the burden of proof on issues raised by appeal shall be on the appellant.

■ Plaintiff first argues that the Commission failed to give adequate consideration to the convenience and necessity of the surrounding community in determining that sale of the Quarry was in the public interest. In support thereof, it refers to testimony that the impact on the surrounding community did not enter into Edison's decision to sell to Sexton; that no studies were undertaken to determine the impact of the sale on the surrounding community; and that a report it published in 1976 established that development of the Quarry was of vital concern to its future welfare.

The considerations which plaintiff urges, however, are not of para-

---

[3]Had Sexton and Browning-Ferris not been parties to these proceedings, they might have found protection in Supreme Court Rule 305(i) (73 Ill. 2d R. 305(i)), which provides that, in the absence of a stay within 30 days of entry of judgment, persons not parties to the action who acquire a right, title or interest in property after the judgment becomes final are not affected by subsequent reversal or modification thereof. However, we need not decide the applicability of this rule to agency proceedings, since both Sexton and Browning-Ferris have actively participated by intervention throughout these proceedings, before the agency and in the initial appeal to the trial court. But see *Illinois Consolidated Telephone Co. v. Aircall Communications, Inc.* (1981), 101 Ill. App. 3d 767, 428 N.E.2d 747 (harmonizing Supreme Court Rule 305 and sections of the Public Utilities Act dealing with stay pending judicial review).

mount importance in a Commission determination under section 27 of the Act. The supreme court has repeatedly held that it is the interests of the public as a whole, rather than the interests of a smaller group of individuals, which are to be protected. (*Illinois Central R.R. Co. v. Illinois Commerce Com.* (1947), 397 Ill. 323, 74 N.E.2d 545; *Yowell v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1935), 360 Ill. 272, 195 N.E. 667; *O'Keefe v. Chicago Ry. Co.* (1933), 354 Ill. 645, 188 N.E. 815; *Campbell v. Illinois Commerce Com.* (1929), 334 Ill. 293, 165 N.E. 790; *Roy v. Illinois Commerce Com.* (1926), 322 Ill. 452, 153 N.E. 648.) Therefore, it is incumbent upon the Commission to make findings on the interests of the public as a whole. In that vein, the Commission found that the sale "enables Edison to dispose of an uneconomic asset and acquire substantial funds to be used to provide public utility services to its customers at a lesser cost \*\*\*."

Plaintiff does not refer us to any evidence before the Commission which refutes this finding, and since we must accept it as true unless plaintiff meets its burden of proving the contrary, we cannot say that it is against the manifest weight of the evidence. In addition, the record contains uncontradicted evidence that the site was not being used by Edison for disposal purposes; that such use would be uneconomical; and that sale of the property would improve Edison's financial position by reducing the amount of money it would have to raise through other sources and eliminating expenses required to maintain the Quarry.

Plaintiff contends, however, relying on *Klopf v. Illinois Commerce Com.* (1977), 54 Ill. App. 3d 491, 369 N.E.2d 906, that the Commission should have given considerable weight to its interests in deciding whether to approve the sale. This reliance is misplaced. In *Klopf*, a railroad proposed to sell a right-of-way it no longer needed to adjoining landowners. The Department of Conservation wished to acquire a portion thereof for a nature trail to be used by the public, and petitioned the Commission for permission to institute condemnation proceedings against the railroad. Although the railroad had proceeded to sell the property without prior approval, the Commission granted the Department's petition and denied that of the railroad for approval of the sales. The Commission found that condemnation by the Department offered a substantially greater financial return than sale, and that the property was affected with a public interest although no longer required for the specific purposes of the utility.

In *Klopf*, an appeal was brought by the landowners who had lost title by reason of the Commission's order. Therefore, contrary to plaintiff's belief, the Commission was weighing the interests of the

public as a whole as against the interests of a small group of individuals affected by the decision. Affirmance was based upon a finding that denial of the railroad's petition was not against the manifest weight of the evidence or contrary to the authority granted to the Commission by the legislature. We do not read *Klopf* as requiring the Commission to speculate on whether property which a utility wishes to sell might conceivably be used by the public for some other purpose, since the Commission in *Klopf* had a specific petition before it. Here, the record does not disclose any alternative public use presented to, but not considered by, the Commission. While *Klopf* allows the Commission to consider such uses properly before it, it does not mandate consideration of factors not appearing in the record.

Furthermore, it appears that the Commission did consider the needs of the surrounding community. Its order approving the sale found that it provided "a much needed sanitary landfill site in close proximity to the communities requiring service of their garbage disposal at reasonable prices, and [provided] the means of restoring the property to a use or uses that will be most beneficial to the area around it \*\*\*."

While plaintiff contends that these findings are not supported by the record, the Commission had before it an uncontradicted report which concluded that sanitary landfills were needed in the area, a fact which is confirmed by plaintiff's own expert witness. In addition, there was ample evidence that the Quarry was detrimental to the community and surrounding nearby residents and that only a sanitary landfill could remedy the situation within a reasonable time. Plaintiff asserts that there was no evidence that the Quarry was detrimental to the community, equating detrimental with hazardous and indicating that the record contains no evidence of accidents or deaths at the site. However, we think that it is clear that the Commission referred to economic as well as physical detriment and, in that regard, there was testimony, again uncontradicted, that the Quarry as it existed was unmarketable; that a land reclamation project was the only way to return it to future economic, viable and productive use; and that, due to the lack of sufficient clean dry fill, any filling operation other than a sanitary landfill was neither probable nor economically feasible.

■ Plaintiff also contends that the order approving sale is against the manifest weight of the evidence in its finding that the purchase price received represented the fair market value of the Quarry. In support thereof, plaintiff relies on the Commission's finding that "the best indication of the market value of the property is \*\*\* the best price obtainable between a ready seller and a ready

buyer based on the property's highest and best permitted use." It argues that the sale price was not the result of good faith negotiations between a ready seller and a ready buyer. In particular, plaintiff points to testimony that Edison had approximately 12 contacts with prospective purchasers, but actively solicited bids only from sanitary landfill operators; that Edison's real estate department did not have experience in purchasing tracts of land in this price range; and that Edison lacked experience with quarries. From this, plaintiff reasons that Edison lacked the necessary experience and ability to market the property effectively, and asserts that Edison did not retain adequate professional help to do so. It further suggests that Edison unduly restricted itself in considering only sanitary landfill operators as potential purchasers.

We believe, however, that the record contains sufficient evidence of arms length negotiations to support the Commission's finding. It appears that Edison discussed sale of the Quarry with a number of parties in addition to sanitary landfill operators and that, besides its own contacts, five real estate brokers were active in seeking purchasers on Edison's behalf; yet, the only offers to purchase, despite these efforts, came from sanitary landfill operators.

We also note that the finding quoted by plaintiff is not the sole basis for the Commission's determination that the price received reflected the fair market value of the property. During hearings on the petition, each side presented an independent appraisal. Edison's appraiser valued the property at $7,713,000, based on use as a landfill. According to the appraisal presented by plaintiff, the value of the property as a sanitary landfill was $11,200,000. The Commission found the former appraisal more credible, based on its examination of the qualifications of each expert, as well as the cross-examination of plaintiff's expert which indicated that the figures used in arriving at his conclusion were in excess of rates currently charged in the market. Since the Commission based this finding on the credibility of the witnesses before it, we cannot say that its conclusion was against the manifest weight of the evidence.

We turn next to plaintiff's contention that dismissal of the citation proceeding on a finding that Edison had not violated section 27 of the Act was contrary to the manifest weight of the evidence. Plaintiff, arguing that various dispositions of property actually took place before the Commission approved sale of the Quarry, refers to the fact that Edison transferred permits, entered into a lease, and granted possession of the Quarry to Sexton prior to obtaining Commission approval, and therefore it maintains that these dispositions of property rights,

along with the contract which provided for them, should be declared void pursuant to section 27 of the Act. Ill. Rev. Stat. 1979, ch. 111²/₃, par. 27(i).

■ Before reaching the merits of this contention, we must again consider Edison's argument that this issue is moot, because the transactions cited as violations have already occurred and any finding we make on the issue will be meaningless. However, we reiterate that this is not the relevant standard; rather, we must determine whether a finding on this issue can have any practical legal effect on the controversy. (*Betts v. Ray* (1982), 104 Ill. App. 3d 168, 432 N.E.2d 1222.) It is therefore necessary to determine what the result would be if, in fact, we did find that the transactions in question violated section 27.

Section 27 provides, in relevant part, that "[e]very *** transfer, lease, *** sale or other disposition or encumbrance of the whole or any part of *** property of any public utility *** and every contract *** made otherwise than in accordance with an order of the Commission authorizing the same, except as provided in this Section, shall be void." (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 27(i).) Thus, if Edison had violated section 27, the transactions complained of could have been declared void. See *Klopf v. Illinois Commerce Com.* (1977), 54 Ill. App. 3d 491, 369 N.E.2d 906.

Since the actual sale of the Quarry was approved prior to conveyance of title, section 27(i) of the Act is inapplicable to that transaction, and it is therefore only necessary to determine whether there can be any practical legal effect to a declaration that the alleged transfer of permits, lease of the Quarry, and grant of possession thereof to Sexton and Browning-Ferris were void. Since provisions for these transactions were contained in the real estate sales contract, we must similarly determine the effect of declaring that contract void.[4]

When a lesser estate or interest in real property and complete title to that property unite in the same person, the interests merge with the title, and the lesser estate or interest is extinguished. (18 Ill. L. & Prac. *Estates* sec. 9 (1956.) See also *Community Discount Centers, Inc. v. Oakbrook Guido's, Inc.* (1978), 68 Ill. App. 3d 466, 386 N.E.2d 67; *Kaufman v. 666 North Water Building Corp.* (1971), 130 Ill. App. 2d 785, 267 N.E.2d 345.) Similarly, contracts as well as preliminary negotiations and agreements made before actual conveyance

---

[4]Assuming, only for purposes of this argument, that the invalidity of various provisions of the contract would necessarily lead to the conclusion that the entire contract was void.

merge into the deed. *Reimer v. Leshtz* (1980), 90 Ill. App. 3d 980, 414 N.E.2d 114.

Thus, in the instant case, the alleged lease and grant of possession have merged with title to the Quarry and have ceased to exist. In addition, the contract in question has merged with the deed of conveyance. We recently declared an issue moot under analogous circumstances in *Panduit Corp. v. All States Plastic Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 405 N.E.2d 1316. In that case, defendant sought review of an order granting a preliminary injunction. While the appeal was pending, the injunction expired by its own terms. The issue was found moot because nothing we did could affect enforcement of that injunction. Similarly, here, nothing we do can now affect the lease, the grant of possession, or the contract, for they, like the injunction in *Panduit*, have ceased to exist.

It is important to note that plaintiff does not argue that voiding of these transactions would have any affect on the order approving sale of the Quarry, nor do we find that to be the case. Although plaintiff refers to section 27(i) as a "penalty," it has not cited any case which so holds. The purpose of section 27, like that of the entire Act, is to assure both that the public is adequately served and that the utility receives a reasonable return for its services. (*Local 777, DUOC, Seafarers International Union of North America v. Illinois Commerce Com.* (1970), 45 Ill. 2d 527, 260 N.E.2d 225.) To that end, the Commission must determine whether retention of particular property is necessary or useful to the public. (*Chicago & North Western Ry. Co. v. Illinois Commerce Com.* (1970), 130 Ill. App. 2d 352, 264 N.E.2d 745.) Section 27(i) allows that determination to be made even after the utility purports to have disposed of the property in question. In addition, to be an effective penalty, section 27(i) would have to provide that, once an unapproved transaction occurred, it could never be approved by the Commission.[5]

The transfer of landfill permits to Sexton and Browning-Ferris presents a separate question, for the permits have not been extinguished by merger, as is the case with the other transactions cited as possible violations of the Act. However, we must still determine whether a finding on this issue will have any practical legal effect on this controversy.

---

[5]This is not to imply that there is no penalty for violation of section 27. Had the Commission found a violation of the Act, Edison could have been liable for a penalty pursuant to section 76. (Ill. Rev. Stat. 1979, ch. 111⅔, par. 80.) However, this issue was not raised by plaintiff, nor would plaintiff have any apparent interest therein.

In the instant case, the permits in question are site-specific; that is, they can be used only in connection with ownership of the Quarry. Since that property has been sold with Commission approval, a return of the permits to Edison would serve no useful purpose. Indeed, there is some question whether, at this point, the permits can be retransferred to Edison, as an application therefore can only be made by the owner and operator of the site. (Pollution Control Board Solid Waste Rule 205(d).) Since it appears that Edison cannot recover the permit and would have no use for it even if it could, a finding that the transfer to Sexton and Browning-Ferris is void would not have any practical legal effect.

Furthermore, return of the permits to Edison would not serve the purpose of section 27, which was intended to allow the Commission to determine whether a proposed sale or encumbrance was in the interests of the public. Since the Quarry has been sold and the permits would only be useful to Edison if it owned the Quarry, there is simply no public interest left to protect.

We also note that nothing in this record indicates that a finding on this issue would affect the current operations of Sexton and Browning-Ferris. The permits transferred were for development of a clean landfill. The Quarry is currently being operated as a sanitary landfill pursuant to permits granted to Sexton and Browning-Ferris by the EPA.[6] Therefore, it does not appear that operations must cease if the transfer of permits is declared void.

For the foregoing reasons, the appeal from the order finding that Edison had not violated section 27 of the Act (No. 81—2656) is dismissed as moot; and the appeal from the order affirming the Commission's approval of sale of the Quarry (No. 81—2657) is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.

---

[6]The propriety of granting these permits is the subject matter of a separate appeal now pending before this court, Village of Hillside v. John Sexton Sand & Gravel Corp., appeal docketed, No. 81—2655.