Chicago and North Western Railway Company, Plaintiff-Appellee, v. Illinois Commerce Commission and the Attorney General of the State of Illinois, Defendants-Appellants.

Gen. No. 54,817.

First District, Second Division.

October 13, 1970.

William J. Scott, Attorney General of State of Illinois, of Chicago, for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago, for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

On February 4, 1969, the plaintiff, Chicago and North Western Railway Company (hereafter referred to as the Railroad), filed a complaint seeking injunctive relief and a declaration that section 27(c) of the Public Utilities Act (Ill Rev Stats 1969, c 111⅔, § 27(c)) does not confer jurisdiction on the Illinois Commerce Commission to control the Railroad's sale, transfer, lease, mortgage, or other disposition of real estate in Illinois if such disposition was neither necessary nor useful to the public. The Railroad also sought to restrain the defendants from enforcing section 27 of the Act.*

The Attorney General filed a motion to dismiss the Complaint and the Railroad then made a motion for summary judgment. The Circuit Court denied the Attorney General's motion to dismiss and granted the Railroad's motion for summary decree. The court found that section 27 of the Act did not apply to real estate and provided no standards; therefore, was in violation of Article 3 of the Constitution of the State of Illinois. The defendants were enjoined from enforcing or attempting to enforce section 27 of the Act.

On June 30, 1969, the defendants filed a notice of appeal to the Supreme Court of Illinois, and on January 21, 1970, the Supreme Court transferred the case to the Appellate Court of Illinois on the ground that it had no jurisdiction on direct appeal. The basis of the direct ap-

---

* The pertinent portions of the section are:

Intercorporate relations and transactions—Approval by commission—Procedure—Waiver.] § 27. Unless the consent and approval of the Commission is first obtained or unless such approval is waived by the Commission in accordance with the provisions of this Section:

. . .

(c) No public utility may assign, transfer, lease, mortgage, sell (by option or otherwise,) or otherwise dispose of or encumber the whole or any part of its franchises, licenses, permits, plant, equipment, business, or other property, but this shall not be construed to prevent the sale, lease, assignment or transfer by any public utility of any tangible personal property which is not necessary or useful in the performance of its duties to the public.

peal was that the case involved questions arising under the Constitutions of the United States and of the State of Illinois. (Supreme Court Rule 302(a)(2).)

The first question to be decided in this court is the import of the order of transfer as it concerns the constitutional issues raised by the litigants. In Sarelas v. Illinois Bell Tel. Co., 42 Ill App2d 372, 192 NE2d 451, the plaintiff filed a direct appeal to the Illinois Supreme Court. The case was transferred to the Appellate Court, and in its opinion this court said at page 374:

> "In his brief filed there he set forth eight separate grounds involving constitutional questions. The cause was transferred without opinion by the Supreme Court, but implicit in its transfer order is a rejection of plaintiff's constitutional arguments and a holding that there are no debatable constitutional questions involved in the case."

The Sarelas case was cited in Barnes v. Peoples Gas Light & Coke Co., 103 Ill App2d 425, 243 NE2d 855, where the court said at 427:

> "The appeal was taken to the Supreme Court which transferred it to this court without comment, thus disposing of a claim by plaintiff that the orders referred to had deprived him of constitutional rights because of his color."

After both Sarelas and Barnes had been transferred, the Appellate Court treated the issues as having been disposed of; consequently, in neither case was any further reference made to the alleged constitutional questions.

In People v. Valentine, 60 Ill App2d 339, 208 NE2d 595, this court noted at page 348 that the then existing rule was

> ". . . if a case in which constitutional questions were raised was transferred to this court, it was presumed that the Supreme Court had determined that the constitutional questions were not genuine or that the questions were not material to the disposition of the appeal. [Citing cases.] There now must be an extension of this rule because of the possible

alternative presumption that the constitutional questions are deemed well settled by the prior decisions of the court."

We cannot hold that such a transfer is an adjudication by the Supreme Court on the merits of the constitutional issues.

In the instant case the Circuit Court accepted the plaintiff's view of the manner in which section 27 of the Public Utilities Act should be interpreted, and therefore entered judgment for the plaintiff. On the direct appeal to the Supreme Court, several constitutional issues are raised by the plaintiff regarding its assertions of the invalidity of the section under review, but the Railroad also urges its view of the proper statutory construction of the Act. Constitutional issues are not reached in a case unless necessary to its disposition.

In People ex rel. Milos v. Kutschke, 42 Ill2d 405, 247 NE2d 423, the Supreme Court said at page 407:

"In addition to the constitutional questions which constitute the major argument here, plaintiffs urge the conversion proceedings were invalid because of failure to comply with the notice and publication requirements . . . . We agree, and for this reason do not reach the constitutional questions, since it is our established rule that constitutional questions will not be considered unless necessary to the disposition of the case. In re Estate of Ersch, 29 Ill2d 572, 577, and cases there cited."

In the case before us, it is possible that the Supreme Court transferred it because there existed the possibility that constitutional questions might never be reached. If this court were to accept plaintiff's argument on statutory construction, there would be no necessity for considering the constitutional questions. This view treats the transfer as an abstention from taking the case to avoid considering the constitutional arguments since they may prove unnecessary to resolve the appeal.

Although in the present case one constitutional issue was passed upon by the lower court, the case had already been disposed of on a nonconstitutional ground.

Whether such an unnecessary constitutional ruling can confer direct appeal jurisdiction is at least questionable. In People v. Board of Education Tp. High School Dist. No. 201, 399 Ill 204, 77 NE2d 200, the court stated at page 210:

> "The established rule, which needs no citation of authorities, is that to warrant a direct appeal on the ground that a constitutional question is involved, the record must affirmatively disclose that the constitutional question was not only presented in the trial court for decision, but was passed upon by it, and that even though the constitutional question was raised in the trial court, if a final judgment was rendered on other issues, no constitutional question is presented for review on appeal to this court."

The City of Watseka v. Wilson, 11 Ill2d 265, 142 NE2d 24, was another case in which the trial judge ruled on the basis of statutory construction and not on the constitutionality of the particular statute. A direct appeal was sought in the Supreme Court. In transferring the case to the Appellate Court the Supreme Court said, at page 267, concerning jurisdiction in direct appeal:

> "That jurisdiction does not exist even if, as here, a constitutional question was raised in the trial court, if the judgment was based on other issues. [Citing cases.] 'A constitutional question is not so presented as to give this court jurisdiction on direct appeal simply because a judgment or decree might have been entered that would have given appellants a right to rely on a constitutional question on appeal.' (People ex rel. Templeton v. Board of Education, 399 Ill 204, 211; Hawley Products Co. v. May, 377 Ill 506, 509; see also People ex rel. Kurtz v. Meyer, 328 Ill 122, 124-5.)"

See also Interstate Bakeries v. Teamsters 734, 31 Ill2d 317, 319, 201 NE2d 452; Beatrice Foods Co. v. Lyons, 12 Ill2d 274, 283, 146 NE2d 68.

In First Nat. Bank & Trust Co. v. Evanston, 30 Ill2d 479, 197 NE2d 705, the Supreme Court transferred

a zoning case to the Appellate Court on the ground that no substantial question arising under the Constitution was presented. The Supreme Court acknowledged (at page 483) that the "ultimate issues to be determined in a typical zoning case are constitutional—. . ." but, in effect, read the element of substantiality into the constitutional provision for direct appeals to the Supreme Court in cases involving a question arising under the Constitution of the United States or of this State. It can hardly be said, then, that the Supreme Court's transfer of a zoning case to the Appellate Court serves as an indication that the constitutional issues are frivolous, irrelevant or well-settled. Rather, it serves as an indication that the case presents no "novel and substantial constitutional issues of concern to every community in the State" (page 486). It is further said at page 486 that "the question of the authority of the municipality to apply the questioned provision of the ordinance to the particular property involved can be determined, as well as the reasonableness of the ordinance when so applied, and if warranted, there may be further review in this (Supreme) court."

There is no reason for distinguishing between transfers in zoning cases and in other cases; consequently, we believe it would be improper to presume any substantive ruling by the Supreme Court from the mere fact of a transfer which provides no instructions and says nothing more than that in the Supreme Court's opinion no direct appeal jurisdiction existed. We must disagree with the statement in Sarelas v. Illinois Bell Tel. Co., supra, that "implicit in its (Supreme Court's) transfer order is a rejection of plaintiff's constitutional arguments and a holding that there are no debatable constitutional questions involved in the case." We also disagree with other cases which have so held.

■ It would seem that there can exist many bases for a transfer other than that the Supreme Court has ruled on the constitutional aspects. As indicated in the First Nat. Bank case, the Supreme Court may deny direct appeal jurisdiction because in its judgment there exist no "substantial" constitutional questions in the sense of state-wide impact. The Supreme Court may deny direct

appeal because the particular constitutional question may not have been ruled upon by the trial court, or because there may exist nonconstitutional bases for disposing of the case. Any or all of these reasons could well justify a transfer of a cause to the Appellate Court, and unless in the transfer the Supreme Court expressly indicates the basis of the transfer, this court will not treat the constitutional aspects of the case as having been ruled upon by the Supreme Court.

In the instant case, the Circuit Court ruled that section 27(c) does not apply to real estate, and issued a memorandum indicating that the only basis of its ruling was that section 27(c) did not "empower the Commission to demand of a public utility prior approval of sales of its real estate." Nevertheless, the summary decree which was entered in the plaintiff's favor included two bases of decision—"that Section 27 of the Public Utilities Act of Illinois does not apply to real estate; that Section 27 of the Public Utilities Act of Illinois as it applies to real estate provides no standard and violates Article 3 of the Constitution of the State of Illinois; . . . ."

We should note that the Attorney General maintains that the plaintiff's suit filed in the Chancery Division of the Circuit Court is a collateral attack upon an order of the Commerce Commission. The basis of this assertion is that the plaintiff first filed a petition with the Commission seeking approval of a particular transaction, the sale of coal rights to an individual for a total purchase price of $489,970. The Railroad then filed a motion to dismiss, asking that the Commission enter an order disclaiming jurisdiction of the subject matter, based on a finding that section 27 did not confer jurisdiction in the Commission over the transfer of real property by a public utility. The Commission denied the motion and denied approval of the sale. However, prior to the date the Commission entered its order, the Railroad filed its complaint in the Circuit Court seeking injunctive relief against the Commission to restrain it from enforcing section 27(c).

The Circuit Court properly entertained the suit. The plaintiff's complaint was not that the Commission had

denied approval of the sale, but that plaintiff was being compelled to seek Commission approval at all. The injury complained of was not that the Commission had improperly denied approval of the sale, but that it had accepted jurisdiction of the matter; and the Railroad sought an injunction to restrain the Commission from taking such jurisdiction. It is apparent that the plaintiff's complaint was not a collateral attack upon a Commission order; therefore, the issues brought to the Circuit Court were entitled to judgment.

One basis of the trial court's ruling was its construction of the statute involved; in its view, section 27 (c) (which we have already set out) did not confer jurisdiction upon the Illinois Commerce Commission regarding the disposition of real estate by a public utility. However, we hold that section 27(c) of the Public Utilities Act does confer jurisdiction upon the Illinois Commerce Commission over public utility real estate transactions.

In support of its argument the Railroad invokes the rules of strict construction, ejusdem generis, the maxim of expressio unius est exclusio alterus. The Railroad contends that the legislative intent is clear that jurisdiction not be conferred.

In 1928 the Illinois Supreme Court decided Chicago & Western I. R. Co. v. Englestein, 333 Ill 117, 164 NE 189, a case involving negotiations between the Wabash Railway Company and Harry M. Englestein for the purchase by Englestein of some railway real estate in the amount of $180,000. Englestein alleged that he had a contract with the railroad while the railroad denied having entered into a contract with him. The railroad sought Commission approval to sell the land to a third party and Englestein intervened to prevent the sale, alleging that he had an interest in the land by way of a contract to purchase. No Commission approval had been obtained for the sale to Englestein. In the course of the opinion, the court pointed out the provisions of section 27 of the Public Utilities Act, and the language of section 27(c) at that time was the same as its present form; the phrase "real estate" did not appear. The court held that since the Commission had not

authorized the contract between the railroad and Engle-stein, it was void; that the contract involved was for the sale of real estate and would not be valid unless it had Commission approval. That rule requiring Commission approval is controlling in the instant case.

■ The Railroad here urges that section 27 provides no standards to guide Commission decision regarding its power over approving or withholding approval of real estate transactions by a public utility. That section provides, in part, however: ". . . if the Commission is satisfied that such petition should reasonably be granted, and that the public will be convenienced thereby, the Commission shall make such order in the premises as it may deem proper . . . . The Commission shall impose such conditions as will protect the interest of minority and preferred stockholders."

The Railroad argues that the quoted language leaves the Commission "free to grant or withhold its approval at its whim." With this we cannot agree; we hold that the statute provides sufficient guidelines for the Commission, and that the grant of power is not an unconstitutional delegation of authority.

The Railroad argues in its brief that the term "reasonably" affords no protection against the exercise of favoritism and discrimination, and asks: "What is the Commission supposed to take into consideration when deciding whether the petition should reasonably be granted? Is it the legal terms of the mortgage? Is it the financial responsibility of the tenant or buyer? Is it the necessity or usefulness of the real estate in the performance of duties to the public? Is it the amount of the rental or mortgage loan or purchase price? Or, is it the terms of payment? Is it the protection of stockholders or is it the convenience to the public?"

These questions, although unintentionally, clearly illustrate that the situation varies depending upon the particular circumstances of the transaction, and it is apparent that the legislature properly used the term "reasonably." A precise formula which will cover all potential situations cannot be adopted. The Commission, however, has been given one constant factor to consider;

namely, that the public will be convenienced by the approval of a particular transaction under its consideration. Once it is satisfied that such is the case, and that the particular transaction should reasonably be granted it will give its approval.

The Railroad complains that under this system "buyer and seller have no means of knowing whether their sale will be approved," and its complaint appears to be that it should not have to undergo periods of uncertainty regarding proposed transactions; that it should be given the same business freedom as afforded to private companies. However, that disregards the fact that a public utility receives certain benefits, and because of ·that fact, owes certain obligations.

Section 41 of the Public Utilities Act states that ". . . the Commission shall determine the just, reasonable or sufficient rates or other charges, . . . ." This standard of "reasonableness," closely related to the section 27(c) standard here under attack, is repeatedly commented upon by the Illinois Supreme Court in Village of Apple River v. Commerce Commission, 18 Ill2d 518, 165 NE2d 329, where the Commission had allowed a telephone company to increase its rates. On appeal to the Circuit Court the decision was reversed, since it was the view of the trial court that the Commission's order was unreasonable. In the opinion the court said at page 523 that the Commission "is to determine that the rates are *just* and *reasonable* and that the services are adequate. In order to perform its public function, the legislature has given the Commerce Commission very broad powers, indeed. The Commission, on its own initiative, can promulgate orders, rules or regulations fixing adequate service standards and requiring adequate facilities." (Emphasis supplied.) This statement places its stamp of approval upon the standard "just and reasonable" and points out and approves the broad powers which have been delegated to the Commission.

The Railroad next urges that if section 27 is construed as including real estate, then the section is in violation of section 13 of Article 4 of the Illinois Constitution, which provides in pertinent part:

"No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title. But if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed . . . ."

That aspect of section 27 dealing with real estate transactions is properly related to the other portions of the Act, and thus, the Railroad's argument is baseless. Public Service Co. v. Recktenwald, 290 Ill 314, 319, 125 NE 271; Central Illinois Public Service Co. v. Vollentine, 319 Ill 66, 70, 149 NE 580; Co-ordinated Transport, Inc. of Illinois v. Barrett, 412 Ill 321, 325-29, 106 NE2d 510.

The Railroad further argues that if section 27 is construed to include real estate, it includes all real estate owned by a public utility; that since not all such real estate is necessary or useful in the performance of its duties to the public, the public utility should not be required to seek Commission approval of transactions of real estate which is neither necessary nor useful in the performance of its duties to the public. The Railroad contends that if section 27 is construed to include real estate, "the legislature failed to make allowance for real estate not devoted to the public utility business and as a result it has restricted the use and enjoyment of such real estate. The restriction is without reason and foundation and arbitrary." The Railroad even argues that such restriction is in violation of section 2 of Article 2 of the State Constitution, providing that "no person shall be deprived of life, liberty or property, without due process of law."

The Railroad fails to take into consideration that if there were no Commission control the decision as to whether retention of any particular real estate were necessary or useful to the public would be left entirely in the hands of the Railroad. In other words, the argument presumes that the property in question is not affected in the public interest, the very essence of what is to be properly determined by the Commission. We think that before

the Railroad can make the argument it here seeks to assert, it would need to have received a ruling from the Commission that the property was in no way affected with the public interest, but that the Commission was still going to withhold approval. That, of course, is not the present situation.

■ Finally, the Railroad pleads that the State is not entitled to act through section 27 to control public utilities engaged in interstate commerce. It argues that the Federal government has preempted the field, and it points to section 94 of the Public Utilities Act, which states:

> "Neither this Act nor any provision thereof shall apply or be construed to apply to commerce with foreign nations or commerce among the several states of this Union, except to the extent permitted under the provisions of the Constitution of the United States and Acts of Congress, and the applicable decisions of the Supreme Court of the United States."

No section of the Interstate Commerce Act requires Interstate Commerce Commission approval for sales such as are here under consideration.

The Railroad argues that notwithstanding Federal silence, the area is preempted because State control over transactions such as this would seriously hamper the commerce of the country, and that the exercise of section 27(c) will create a " 'prospect of interference with the federal regulatory power' " such as was found in Natural Gas Pipeline v. Commerce Commission, 33 Ill2d 214, 223, 210 NE2d 490. It does not appear to us that there is any such danger, nor do we see why the State should not be entitled to regulate the disposition of property within its own borders.

We disagree with the Circuit Court's reading of the section under review, and hold that the Illinois Commerce Commission is vested with jurisdiction by section 27(c) to grant or withhold approval of real estate transactions by public utilities pursuant to the standards provided. We further hold that adequate standards are provided and that the statutory provision is constitutionally sound.

Accordingly, the order of the Circuit Court is reversed and the cause is remanded with directions to dissolve, expunge and set aside the injunction heretofore entered.

Reversed and remanded with directions.

LYONS and BURKE, JJ., concur.