HENRY C. McMILLIN *et al.*, Plaintiffs-Appellants, *v.* ECONOMICS LABORATORY, INC., Defendant-Appellee and Third-Party Plaintiff-Appellant (William M. Gibbons, Trustee, Third-Party Defendant-Appellee).

Third District No. 3—83—0751

Opinion filed August 28, 1984.—Rehearing denied October 11, 1984.

Louis R. Bertani, Thomas R. Wilson, and John L. O'Brien, all of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellants.

Theodore J. Jarz, of McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, of Joliet, for appellee Economics Laboratory, Inc.

Emery D. Curlee, of Chicago, for cross-appellee William M. Gibbons.

JUSTICE SCOTT delivered the opinion of the court:

Henry C. McMillin, Barrdy B. Reddy, and Eleanor H. Bennett, plaintiffs, filed suit against the defendant, Economics Laboratory, Inc., a Delaware corporation, for declaratory judgment, injunctive relief, ejectment and damages for a continuing trespass upon plaintiffs' real estate resulting from the defendant's construction and maintenance of a railroad spur track thereon. The defendant filed a complaint against William M. Gibbons, who is trustee for the property of the Chicago, Rock Island and Pacific Railroad Company, hereinafter referred to as the Rock Island Railroad, for indemnification of damages, if any were awarded to the plaintiffs. After bench trial the court found legal title to the real estate in question to be vested in the plaintiffs and awarded nominal damages of $1. The trial court denied all other relief prayed for by plaintiffs and further denied relief to the third-party plaintiff, Economics Laboratory.

The factual situation from which this appeal emanated is somewhat involved; however, from the evidence adduced at trial, it is undisputed that the real estate in question is a strip of land 50 feet wide and 1⅞ miles long. It consists of rough terrain, is unimproved and unfenced. A rough roadway is on the property as well as a number of large water-filled holes. With the exception of a small garden planted on it by Charles McMillin shortly after he purchased the property, it was never utilized for any other purpose by the McMillin family. This strip of land lies south of and adjoins the south right of way of the land of the third-party defendant, Rock Island Railroad. The spur track being complained of was constructed to run from the Rock Island right of way across the strip claimed by the plaintiffs, then across other land to the industrial plant site of the defendant Economics Laboratory.

For purposes of this appeal the pertinent portion of the history of the strip of land which plaintiffs claim to own commenced in the year 1939. In that year Charles McMillin, father of the plaintiffs, purchased the land and thereafter paid property taxes on it until his death in 1955. Charles McMillin died intestate and left as his heirs Fannie McMillin, his wife, and three children, the plaintiffs Henry C. McMillin, Barrdy B. Reddy and Eleanor H. Bennett. In 1968 the decedent's widow conveyed her interest in the real estate to the aforenamed children. The children, being the plaintiffs, have at all times since they acquired the real estate paid the taxes on it.

The evidence further established that in 1968 the plaintiffs, for consideration, granted a pipeline easement to Caterpillar Tractor Company. Previously, in approximately 1963, the plaintiffs, for consid-

eration, granted the use of the real estate for a period of one year to a business known as Construction Aggregates Corporation. During this one-year period, Construction Aggregates attempted to bar access to the real estate by installing a chain across the only accessible entrance way, which was at the west end of the real estate. Construction Aggregates also posted a "No Trespassing" sign at this location.

All the plaintiffs are nonresidents of the State of Illinois, and none of them ever resided in the Joliet area, where the real estate with which this case is concerned is located. At the time of this trial Henry resided in Michigan, Barrdy in Florida, and Eleanor in Pennsylvania. Throughout the years, the plaintiff Henry C. McMillin, and on several occasions the husband of the plaintiff Barrdy B. Reddy, would drive by the real estate and on a number of occasions would refasten the cable across the Bush Road access and would repost the "Keep Out" or "No Trespassing" signs. It was in 1980 that the plaintiffs first learned that a railroad spur track had been constructed across the strip of real estate. After discovering the spur track the plaintiff Henry C. McMillin, his brother-in-law and apparently Barrdy B. Reddy, went to the plant of the defendant Economics Laboratory and complained of the spur track and attempted to discuss the matter. Their complaint was forwarded to the legal department of the corporate headquarters of the defendant. Not hearing from anyone associated with the defendant, the plaintiff McMillin twice attempted to talk by telephone to the president of the defendant corporation in an an effort to get together with someone and in his words "make a deal." He first talked to a lady secretary and later to a member of the defendant's legal department; however, neither call resulted in the obtaining of any acts on the part of the defendant pertaining to negotiations aimed at settling the dispute.

In 1971 the defendant Laboratory purchased a plant site (70 acres) which is located south of the strip of real estate which the plaintiffs claim to own. Upon this site a plant and other facilities were constructed. The plant manufactures solvents such as soaps, detergents and degreasers. Some of the products manufactured by the defendant require the shipping or transportation of highly reactive chemicals which are difficult, hazardous and expensive to ship by truck, and consequently such chemicals are transported by tank railroad cars across the spur track. The spur track is used to transport approximately 70 cars per month to and from the plant of the defendant. At the time of the trial of this case, the defendant employed approximately 500 people.

Further facts as well as other matters which occurred at trial will

be set forth as the same become pertinent to the determination of the issues presented in this appeal.

■■ We first direct our attention to the argument of the defendant-cross-appellant, Economics Laboratory, that the plaintiffs failed to prove that they had title to the property in question. It is apparent that defendant does not deny that in the 1930's Charles McMillin was the successful bidder for the property at public auction. It is the defendant's contention, however, that at the time Charles McMillin received a deed from the Chicago and Illinois Valley Railroad Company, the law of our State required prior approval of sale from the Illinois Commerce Commission and such approval was not obtained and hence the sale was void. In support of this contention the defendant relies on the statutory language in section 27 of "An Act concerning public utilities" (Ill. Rev. Stat. 1939, ch. 111²/₃ par. 27) and the cases of *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 383 N.E.2d 919, and *Chicago & North Western Ry. Co. v. Illinois Commerce Com.* (1970), 130 Ill. App. 2d 352, 264 N.E.2d 745. The factual situations presented in the cited cases are in no way similar to those presented in the instant case; however, we quarrel not with the defendant's statement that the purpose of the statutory requirement that approval by the Commerce Commission of a sale of the property of a public utility is to assure that the public interest in the use of the property is protected when the utility attempts to dispose of it. We are, however, of the opinion that the defendant's argument as to Commerce Commission approval or lack of approval in the instant case is indeed tenuous. While an approval or consent of the Commerce Commission was not sought nor received which specifically described and related to the property in question, the Commerce Commission was not only involved in the sale but in fact directed that the Chicago and Illinois Valley Railroad dispose of the property. On May 14, 1934, pursuant to a Commerce Commission order, the railroad (C. & I.V.), a predecessor in the chain of title to the plaintiffs, discontinued its operation between Joliet and Depue, Illinois, and surrendered all its franchises except its corporate charter. On July 13, 1934, the Commerce Commission by order authorized the railroad (C. & I.V.) to dispose of its assets, one of which is the property claimed by the plaintiffs. To now hold that the deed received by Charles McMillin many years ago is void because approval of his purchase of the property was not obtained from the Commerce Commission when that regulatory body authorized and directed its sale would result in an absurdity. A former member of the Bar of Illinois, Abraham Lincoln, in describing a certain judge, said that he would hang a man for blowing

his nose in the street, but he would quash an indictment if it failed to specify which hand he blew it with. In short, this court will not elevate meaningless technicalities over substance.

The plaintiffs claim, and rightfully so, that even if their father's deed to the property was insufficient, they are nevertheless the rightful owners by virtue of adverse possession. The plaintiffs' claim is predicated upon the statutory provisions relating to seven years' payment of taxes with color of title and possession. Ill. Rev. Stat. 1983, ch. 110, par. 13—109, effective July 1, 1982.

■■■ The defendant attacks the plaintiffs' claim of possession because the property was not fenced, no improvements were made on it, and it was unoccupied and was visited by the plaintiffs at only irregular intervals. Enclosure of land is not necessary to constitute possession. (*Kerr v. Hitt* (1874), 75 Ill. 51; *McLean v. Farden* (1871), 61 Ill. 106.) The plaintiffs posted "No Trespassing" signs and attempted to prevent invasion of their property by barring the only entrance to it by the use of a steel cable. The possession necessary to constitute adverse possession is not required to be fuller than the character of the land admits. (*Chicago Title & Trust Co. v. Darley* (1936), 363 Ill. 197, 1 N.E.2d 846.) Our supreme court has stated:

> "Neither actual occupancy, cultivation nor residence is necessary to constitute actual possession of land. Where property is so situated as not to admit of permanent useful improvements, the continued claim of the party, evidenced by public acts of ownership such as he would exercise over property which he claimed in his own right and would not exercise over property which he did not claim, may constitute actual possession." *Burns v. Curran* (1918), 282 Ill. 476, 480, 118 N.E.2d 750, 752. See also *Gochenour v. Logsdon* (1940), 375 Ill. 139, 30 N.E.2d 666.

■ The record discloses that the plaintiffs or one of them viewed the property, reattached the steel cable and reposted the "No Trespassing" sign when as nonresidents they came to Illinois, which was almost yearly. It is noted that the spur track was discovered by the plaintiffs some years after it had been constructed; however, the nature of the land, its terrain and inaccessibility required a physical walk on the property before there could be an awareness of the spur track. The plaintiffs demonstrated their claim of dominion and ownership by granting for a consideration a year's use of it in 1963 to a business known as Construction Aggregates Corporation, and in 1968 for consideration they granted a pipeline easement to Caterpillar Tractor Company. The record further discloses that the plaintiffs, and/

or their father and mother, paid the real estate taxes on the property from 1940 to the date of the trial, a period of 43 years.

The plaintiffs met in full the statutory requirements necessary to establish ownership by adverse possession.

■ The defendant further asserts that the property was abandoned. The reasons set forth in support of plaintiffs' claim of title by adverse possession serve equally well to negate the defendant's claim of abandonment. If the same had been abandoned, the property would have escheated to the county in which it is located. (Ill. Rev. Stat. 1981, ch. 49, par. 3.) The record is barren of any evidence that the defendant contacted or attempted to contact any governmental entity before, during or after the time the spur track was constructed.

The trial court correctly held that title to the real estate was vested in the plaintiffs.

■ The plaintiffs argue that the trial court's decision, the effect of which was to refuse to restore them to possession of all their rights in the property, is against the manifest weight of the evidence. The plaintiffs sought injunctive relief which the trial court denied. The record is clear that when the defendant Laboratory purchased the plant site, it knew that a spur track was essential to its operation. From several sources the defendant knew that there was a 50-foot gap in the uninterrupted contiguous spur track right-of-way from its plant to the right-of-way of the Rock Island Railroad. Rock Island Railroad in 1970 warned the defendant that there was some missing ownership. An examination of legal descriptions received by the defendant from Rock Island shows that the defendant had a right-of-way up to the south line of the plaintiffs' land and north of the plaintiffs' land, but not across the land. A design engineer for the defendant testified that he knew of the gap in the title and referred the matter to the company's legal department. The gap was apparently not taken seriously, since the defendant did not on its own seek other easements, nor did it request any further assistance from Rock Island regarding easements or clearances.

Testimony from employees of the defendant establish that no effort was made to find the owners of the 50-foot-wide strip of land over which the spur track was to be constructed. The defendant conducted no title search, nor were the real estate tax records checked, which would have readily disclosed the identity of the missing owners. Representatives of the defendant were not only loath to discuss the matter of a trespass with one of the owners, but in fact refused to discuss the matter. There was an aborted effort to settle the matter which we will later address, but such effort to settle occurred some 10

to 11 years after the spur track was constructed and continuously used by the trespasser. The trial court determined that the defendant was a trespasser but an unintentional one and awarded nominal damages in the sum of $1.

█ █ Reflecting upon the evidence and applying the applicable law, it is the conclusion of this court that the trial court was in error in finding the trespass of the defendant to be unintentional. This court has addressed the issue of whether an encroachment or trespass is intentional or unintentional in the case of *Stroup v. Coda* (1965), 65 Ill. App. 2d 396, 212 N.E.2d 518, and *Malchow v. Tiarks* (1970), 122 Ill. App. 2d 304, 258 N.E.2d 811. In *Malchow* it was stated:

> "For an encroachment to be intentional, it must be either deliberate or in willful disregard of the rights of the adjoining property owner. Nitterauer v. Pulley, 401 Ill. 494, 82 N.E.2d 643. Such an encroachment will be regarded as deliberate when made after due warning. Ariola v. Nigro, 16 Ill. 2d 46, 156 N.E.2d 536. Willful disregard of the adjoining property owner's rights may result from culpable negligence, that is, the failure to take ordinary and reasonable precaution to ascertain the boundary line. Nitterauer v. Pulley, supra." 122 Ill. App. 2d 304, 312, 258 N.E.2d 811, 815.

We will not reiterate the facts; however, the defendant's failure to take ordinary precautions pertaining to the ownership of the plaintiffs' tract of land after due warnings from Rock Island and after having knowledge that there was a gap in the easement which was needed for the spur line all serve to elevate the defendant's conduct to that of a wilful, intentional trespass. We are mindful of the general rule of law that a mandatory injunction is an extraordinary remedial process which is not a matter of right, but may be granted only upon the exercise of sound judicial discretion in cases of great necessity. (*Ambassador Foods Corp. v. Montgomery Ward & Co.* (1963), 43 Ill. App. 2d 100, 192 N.E.2d 572.) This court has not been loath to approve the issuance of a mandatory injunction in trespass cases. (*Taubert v. Fluegel* (1970), 122 Ill. App. 2d 298, 258 N.E.2d 586; *Pliske v. Yuskis* (1980), 83 Ill. App. 3d 89, 403 N.E.2d 710.) In the instant case, the defendant's trespass has been continuous since 1972. It is continuing at the present time and may well continue for an untold number of years. The plaintiffs are entitled to a mandatory injunction which will abate the trespass on their property and restore to them their possessory rights.

The plaintiffs further assign as error the trial court's refusal to admit their evidence as to compensatory and punitive damages. Hav-

ing determined that injunctive relief is the proper remedy in this case, we deem it unnecessary to address this issue.

We have heretofore alluded to a settlement which during the course of the trial was entered into between the plaintiffs and the defendant, Economics Laboratory. The settlement provided that the defendant would pay to the plaintiffs the sum of $20,000 in exchange for a conveyance of approximately 5,000 square feet of property upon which the spur track was located. After the settlement had been entered into on May 5, 1983, the trial court entered an order of dismissal on the basis that all matters in controversy had been settled. Throughout the trial, of the three plaintiffs only Henry C. McMillin appeared in court, and he was the only plaintiff present at the settlement negotiations and the only plaintiff to approve the settlement. Subsequently a motion was filed by the plaintiffs to vacate the settlement order and hearing on this motion was commenced on June 23, 1983. The evidence disclosed that neither the plaintiff Henry C. McMillin nor his attorneys had consent or authority from the remaining two plaintiffs to settle the case. After a full evidentiary hearing in which the plaintiff Henry C. McMillin, his sister Barrdy B. Reddy, her husband, and an attorney for the plaintiffs testified, the trial court requested that case law authority be submitted. After oral arguments the trial court vacated the order of dismissal on the grounds that the motion to vacate was timely and that there was a lack of authority on the part of plaintiff Henry C. McMillin or the attorney for the plaintiffs to compromise the claim.

The defendant Laboratory cites two cases in support of its contention that the trial court should not have vacated the dismissal order which was entered because of the settlement. (See *Kalman v. Bertacchi* (1978), 57 Ill. App. 3d 542, 373 N.E.2d 550, and *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 356 N.E.2d 837.) These cases, however, present a far different situation than that present in the instant case. In both *Kalman* and *Sheffield*, the trial court participated in and took an active role in effecting the settlements. In the instant case the trial court took no part in the negotiations for settlement. In the cases relied on by the defendant Laboratory, the parties involved in the settlement knowingly agreed to the terms of the settlement agreement, and in the *Sheffield* case the parties had given to their counsel express authority to settle the case. In the instant case the evidence discloses that the plaintiffs Reddy and Bennett had no knowledge of the settlement until after the dismissal order of May 5, 1983, had been entered. They had never authorized any settlement. The plaintiff Reddy testified that severe and se-

rious pelvic injuries prevented her from participating in or being present at the trial. The record further discloses that the plaintiff Mc-Millin was under the impression that his sisters would go along with the settlement. The attorney for the plaintiffs was under the impression that the plaintiff McMillin had authority to settle the case. In short, a situation prevailed where two of the plaintiffs lacked knowledge and had not authorized a settlement. Based upon such evidence it cannot be concluded that the trial court abused its discretion. *City of Des Plaines v. Scientific Machinery Movers, Inc.* (1972), 9 Ill. App. 3d 438, 292 N.E.2d 154.

■■■ The defendant Laboratory brought a third-party action against Rock Island Railroad (third-party defendant) in which indemnity was sought if it (Economics Laboratory) should be found to be liable to the plaintiffs. With respect to this third-party action, the trial court found in favor of the third-party defendant Rock Island Railroad, thereby denying any indemnity relief. The defendant Laboratory as cross-appellant claims that the decision of the trial court was error.

A brief resume of facts which resulted in a contractual relationship between the defendant Laboratory and the Rock Island Railroad is as follows. In 1972 the defendant Laboratory entered into a written contract with the Rock Island Railroad. The contract related to the construction and operation of a railroad industrial track line between the main line of the railroad and the defendant Laboratory's plant site. The defendant Laboratory agreed at its sole expense to employ a private contractor to construct the track from the Rock Island Railroad's right-of-way to the end of the spur track on the defendant Laboratory's property. As to this appeal the pertinent part of the contract is as follows:

"2. Before track is constructed, railroad shall procure all public authority and permission necessary for the construction, maintenance and operation of track. Railroad shall procure necessary easement from Chicago Gravel Company; lease from State of Illinois, Department of Public Works and Buildings, for crossing of Illinois and Michigan Canal; and permit from Commonwealth Edison Company for right to cross its right of way, all for a right of way to serve Industry with said Track *** ."

An examination of the foregoing provision in the contract discloses that the intent of the parties is clear and free from ambiguity. The Rock Island Railroad contracted to procure all public authority and permission necessary for the construction of the track. That no such public authority or permission was necessary and thereby not obtained does not detract from the clear intent of the parties. Evidence

was adduced to the effect that frequently public authorization and permission to construct and maintain a line are necessary. It should be noted that obtaining right-of-way, whether in fee simple or by easement, is an interest in land. Obtaining public authorization and permission to construct and maintain is not. The contract recognized this distinction, since it specifically required that Rock Island Railroad procure an easement from the Chicago Gravel Company, a lease from the State of Illinois for the crossing of the Illinois and Michigan Canal, and a permit to cross a right-of-way of Commonwealth Edison Company. Rock Island Railroad complied with the terms of the contract and submitted documents to the defendant Laboratory which clearly showed the presence of a strip of land from which no easement was obtained. This strip of land was the property of the plaintiffs. This matter of the gap in the right-of-way was submitted to the attorney for the defendant Laboratory, but the problem was ignored.

■■■ Assuming *arguendo* that the contract was ambiguous and evidence as to the conduct of the parties is to be considered in interpreting the ambiguity, it becomes abundantly clear that Rock Island Railroad was under no duty to discover the owners of the strip of land and obtain from them an easement. The contract was executed June 30, 1972. Over 19 months earlier on November 24, 1970, Rock Island Railroad warned the defendant Laboratory that there might be another landowner between the Rock Island right-of-way and the Illinois and Michigan Canal. Later, Rock Island Railroad furnished the defendant Laboratory with easements from Commonwealth Edison and Chicago Gravel Company, which were recorded on January 4, 1972. The Commonwealth Edison easement had a print attached clearly showing a strip of land, which is the plaintiffs' land, lying between the Rock Island Railroad right-of-way line and the beginning point of the easement. The easement from the Chicago Gravel Company also notes the presence of the property owned by the plaintiffs. In a number of pieces of correspondence from officials and legal counsel for defendant Laboratory to Rock Island Railroad officials, the lack of an easement across plaintiffs' property was ignored. The contract was executed by the parties after the defendant Laboratory had notice of information which disclosed that the plaintiffs' land was to be crossed, yet no request was made of Rock Island Railroad to obtain an easement.

The trial court correctly held that Rock Island Railroad was not obligated to acquire an easement or right-of-way across the strip of land owned by the plaintiffs.

■■■ The Rock Island Railroad further asserts that the trial court

erred when it vacated its judgment which dismissed the third-party complaint of the defendant Laboratory. The dismissal of the third-party complaint resulted from the court's reasonable belief that the litigation had been settled. If the settlement had been a valid one, all causes of action asserted by the parties against each other would have been extinguished. Subsequently, it was determined by the court that a valid binding settlement had not been effected, and consequently the trial court put the parties back in the same position as they were prior to the aborted settlement. In order to do this, the court, *inter alia*, found it necessary to vacate its judgment dismissing the third-party complaint. In so doing no error was committed.

 █ Both the defendant Laboratory and the third-party defendant Rock Island Railroad attempt to raise the issue that the settlement agreement, while not binding upon all the plaintiffs, was binding upon the plaintiff Henry C. McMillin. Several motions and objections thereto were filed and taken with the case. One is a motion filed by the plaintiffs to strike that portion of the brief of the third-party defendant Rock Island Railroad which relates to the enforcement of the vacated settlement agreement as against one of the plaintiffs, to wit, Henry C. McMillin. A response and objections were filed by the Rock Island Railroad and defendant Laboratory. The motion to strike filed by the plaintiffs is well taken. The defendant Laboratory did not list the issue in its notice of appeal nor raise the issue in its initial brief. The third-party defendant Rock Island Railroad did not file a cross-appeal on any issue in the case. The purported issue was not properly raised. A second motion taken with the case was one filed by the defendant Laboratory which seeks to strike a portion of the reply brief of the plaintiffs. The motion is grounded upon the allegation that the reply brief contains a statement of facts which is violative of Supreme Court Rule 341(g) (87 Ill. 2d R. 341(g)). An examination of the defendant Laboratory's motion and objections filed thereto by the plaintiffs fails to disclose that there was a violation of Supreme Court Rule 341(g), and consequently the motion to strike is denied.

For the reasons set forth, the judgment of the circuit court of Will County is affirmed in part and reversed in part. The judgment of the circuit court which found in favor of the third-party defendant, William M. Gibbons, trustee of the property of Chicago, Rock Island and Pacific Railroad Company, and denied the relief sought in the third-party complaint filed by the defendant, Economics Laboratory, Inc., is affirmed. The award of nominal damages to the plaintiffs payable by the defendant, Economics Laboratory, Inc., is reversed, as is

530

the denial of injunctive relief to the plaintiffs. This case is remanded to the circuit court of Will County with directions to issue a mandatory injunction directing Economics Laboratory, Inc., to cease using the spur track on the land of the plaintiffs and further directing that Economics Laboratory, Inc., remove the spur track, after which the land of the plaintiffs shall be restored by Economics Laboratory, Inc., to the status and condition that was in existence prior to 1972.

Affirmed in part, reversed in part and remanded with directions.

HEIPLE and BARRY, JJ., concur.