(No. 61088.—

ILLINOIS POWER COMPANY *et al.*, Appellees, v. THE ILLINOIS COMMERCE COMMISSION *et al.* (Central Illinois Public Service Company, Appellant).

*Opinion filed March 19, 1986.*

Isham, Lincoln & Beale, of Chicago (David J. Rosso, Boyd J. Springer, Michael R. Goldfein and Michael F. Kerr, of counsel), for appellant Central Illinois Public Service Company.

Hercules F. Bolos and Kathleen Nolan, Special Assistant Attorneys General, of Chicago, for the Illinois Commerce Commission.

Schiff, Hardin & Waite, of Chicago, and Barnhard, Scriber & Koger, of Mt. Carmel, for appellees.

JUSTICE WARD delivered the opinion of the court:

On December 7, 1981, Illinois Power Company filed a petition under section 27 of the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111⅔, par. 27) seeking approval by the Illinois Commerce Commission of a proposed merger of its wholly owned subsidiary, I.P., Inc., with Mt. Carmel Public Utility Company. The Commission allowed Central Illinois Public Service Company (CIPS), which also was interested in acquiring Mt. Carmel, to intervene and, after hearings at which Illinois Power and Mt. Carmel presented evidence in support of the petition and CIPS presented evidence in opposition, the Commission denied the petition. Illinois Power's petition for rehearing was denied.

Illinois Power and Mt. Carmel filed separate appeals in the circuit court of Wabash County from the order of the Commission. The circuit court consolidated the appeals and gave CIPS leave to intervene. The court confirmed the order of the Commission, but the appellate court reversed. The court held that the standard that the Commission stated a petitioner must satisfy for Commission approval exceeded the authority delegated to it under the Public Utilities Act. (127 Ill. App. 3d 937.) We granted CIPS' petition for leave to appeal under Supreme Court Rule 315 (94 Ill. 2d R. 315(a)).

Illinois Power Company, which is engaged in the generation, transmission, distribution and sale of electric energy in 49 Illinois counties, serves approximately 522,000 customers. It also distributes and sells natural gas to approximately 380,000 customers in 37 counties. Mt. Carmel provides electric energy and natural gas in Wabash and Lawrence counties. It has approximately 5,500 customers for electric energy and 3,500 customers

for natural gas. Under the terms of the proposed merger, I.P., Inc., would acquire Mt. Carmel through the distribution of 189,825 shares of Illinois Power common stock to the shareholders of Mt. Carmel. The proposal provided that Illinois Power would eventually discontinue the operation of the electric energy generating facilities maintained by Mt. Carmel and supply the Mt. Carmel service area with electric energy generated by facilities operated by Illinois Power. This energy would be transmitted over CIPS' transmission lines under an agreement similar in terms to the agreement then existing between CIPS and Mt. Carmel. Illinois Power also proposed to supply gas through Mt. Carmel's existing contract with Texas Eastern Transmission Corporation.

CIPS generates, transmits, distributes and sells electric energy and distributes and sells natural gas in 65 counties in central Illinois. Smaller than Illinois Power, CIPS has roughly 305,000 customers for electricity and about 148,000 customers for natural gas. The area which CIPS serves adjoins Mt. Carmel's service area on three sides; the fourth side of Mt. Carmel's area is defined by the Indiana state line. CIPS has provided electric service to Mt. Carmel since 1959. Among the properties that Illinois Power proposed to acquire in order to serve the Mt. Carmel area were two 69 KV electric transmission lines, one of which terminates at CIPS' South Lawrenceville substation and the other at CIPS' South Albion substation. CIPS, it was shown, has a substantial investment in the facilities and equipment used to serve the transmission needs of Mt. Carmel, and there was evidence that the personnel at CIPS have become familiar with the design and operation of Mt. Carmel's equipment.

Section 27 of the Public Utilities Act directs the Commerce Commission, *inter alia*, to regulate mergers, acquisitions or consolidations among public utilities. A pub-

lic utility that seeks to merge with another utility is required under the section to file with the Commission a petition setting out fully the terms of the proposal. The Commission, if it considers it necessary, will conduct hearings on the petition and "if the Commission is satisfied that such petition should reasonably be granted, *and that the public will be convenienced thereby*, the Commission shall make such order in the premises as it may deem proper and as the circumstances may require." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 111⅔, par. 27.

Illinois Power and Mt. Carmel argue that the "public convenience" standard in section 27 requires only that the petitioner demonstrate that Illinois Power will provide adequate service at reasonable rates to the public upon Illinois Power's merger with Mt. Carmel. They contend that the Commission erroneously increased the burden for its approval by interpreting the "public convenience" standard as requiring the petitioner to establish that its proposal was superior to an alternative proposal, which here was a merger proposal that CIPS was prepared to make. The Commission and CIPS respond that the Commission has broad discretion in exercising its regulatory duties under the Public Utilities Act, and they assert that the alternative proposal, the terms of which CIPS introduced in the course of objecting to Illinois Power's petition, was properly considered by the Commission in determining whether the merger of Illinois Power with Mt. Carmel would convenience the public.

The Commerce Commission, "because it is a creature of the legislature, derives its power and authority solely from the statute creating it, and its acts or orders which are beyond the purview of the statute are void." (*City of Chicago v. Illinois Commerce Com.* (1980), 79 Ill. 2d 213, 217-18, citing *People ex rel. Illinois Highway Transportation Co. v. Biggs* (1949), 402 Ill. 401, 409.) Courts have

given great weight and deference to the interpretation of an ambiguous statute by a public agency charged with the administration and enforcement of the statute. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Com.* (1983), 95 Ill. 2d 142, 152. See also *Gladstone Realtors v. Village of Bellwood* (1979), 441 U.S. 91, 107, 60 L. Ed. 2d 66, 81, 99 S. Ct. 1601, 1612.) Those interpretations, while not binding on courts, are considered an informed source in ascertaining the legislative intent because of the agency's experience and expertise. *Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 344-45; *Johnson v. Marshall Field & Co.* (1974), 57 Ill. 2d 272, 278; 2 K. Davis, Administrative Law sec. 7:13 (2d ed. 1979).

The legislature, apparently recognizing that it would be impractical to attempt to provide precise criteria to be considered in every transaction regulated under section 27, gave the Commission broad discretion to decide whether a proposed transaction should be approved when it set "public convenience" as the standard for approval. (See *Chicago & North Western Ry. Co. v. Illinois Commerce Com.* (1970), 130 Ill. App. 2d 352, 361.) We consider that the Commission was correct in concluding that "[t]he question whether a merger is in the public interest can be meaningfully answered only within the context of possible alternative actions." (Throughout its order the Commission used "public convenience" interchangeably with "public interest.") It is obvious that the optimum public good may not be attained if the Commission can consider only what the petition before it proposes.

The Supreme Court, in reviewing an order of the Interstate Commerce Commission which authorized one railroad to lease another, held that the "public interest" standard found in the Interstate Commerce Act (49 U.S.C.A. sec. 5(4)(a)) should be construed within the con-

text and purpose of that act. (*United States v. Lowden* (1939), 308 U.S. 225, 230, 84 L. Ed. 208, 213, 60 S. Ct. 248, 251, citing *Texas v. United States* (1934), 292 U.S. 522, 531, 78 L. Ed. 1402, 1409, 54 S. Ct. 819, 824; see also 2A J. Sutherland, Statutory Construction sec. 45.09, at 40 (4th ed. 1984) (purpose of legislation often guide to ascertaining meaning of statutory provision).) The purpose of the Illinois Public Utilities Act is "to assure the provision of efficient and adequate utility service to the public at a reasonable cost." (*Seafarers Union v. Commerce Com.* (1970), 45 Ill. 2d 527, 535; *Village of Hillside v. Illinois Commerce Com.* (1982), 111 Ill. App. 3d 25, 36.) It is reasonable and desirable that the Commission should be allowed to consider the comparative advantages of service provided by a utility other than the petitioning utility, and the respective costs to customers, when weighing the question of public convenience in a proceeding under the Public Utilities Act. A common understanding of convenience is "a favorable or advantageous condition, state, or circumstance." (Webster's Third New International Dictionary 497 (1961).) The public-convenience standard should not be construed to prohibit the Commission from considering an alternative proposal that is advantageous and indeed may be preferable for the public convenience. Here CIPS, when objecting to the petition of Illinois Power, placed before the Commission the terms of a proposal it was prepared to offer, but did not because of Mt. Carmel's refusal to consent to CIPS offer of merger.

In *Klopf v. Illinois Commerce Com.* (1977), 54 Ill. App. 3d 491, the Commission refused to approve the petition of a railroad public utility that proposed the sale of a tract of land to adjoining landowners. The Commission approved the opposing petition of the Illinois Department of Conservation, which enabled the Department to begin condemnation proceedings so that the property

might be put to public use. The appellate court was asked to decide whether the Commission had exceeded its authority under section 27 by considering whether the condemnation of the land would better serve the public interest. It was contended that the Commission was limited to deciding whether the land was still needed for utility purposes and whether the utility received a fair market price for the property. The appellate court held that the Commission had discretion to look beyond the railroad's petition to sell the land and, *inter alia,* determined that the public convenience would be better served by the plan of the Department of Conservation to use the land as a nature trail. 54 Ill. App. 3d 491, 498-99.

Illinois Power and Mt. Carmel seek to distinguish *Klopf,* observing that there the Commission had competing petitions before it and therefore had authority to approve either petition. Here CIPS did not file a petition setting out its proposal, and consequently the Commission, by its own admission, did not have authority to order the merger of Mt. Carmel with CIPS. The record, however, shows that CIPS was impeded in its efforts to reach an agreement with Mt. Carmel by the reluctance of Mt. Carmel to engage in negotiations with CIPS. That an alternative petition was not filed should not of itself preclude the Commission from considering an alternative proposal, particularly when CIPS had presented to the Commission a detailed account of the proposal.

Having held that the Commission had discretion to consider the alternative proposal, we consider whether its findings were contrary to the manifest weight of the evidence. Section 68 of the Public Utilities Act provides:

"The findings and conclusions of the Commission on questions of fact shall be held *prima facie* to be true and as found by the Commission; and a rule, regulation, order or decision of the Commission shall not be set aside un-

less it clearly appears that the finding of the Commission was against the manifest weight of the evidence presented to or before the Commission for and against such rule, regulation, order or decision ***. Rules, regulations, orders or decisions of the Commission shall be held to be prima facie reasonable, and the burden of proof upon all issues raised by the appeal shall be upon the person or corporation appealing from such rules, regulations, orders or decisions." (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 72.)

See also *Citizens Utilities Co. v. Illinois Commerce Com.* (1971), 50 Ill. 2d 35, 39.

The Commission judged that the contiguity of the properties, simplification of electric· service facility planning, fairness and reasonableness to shareholders, interests of the ratepayers, and incremental cost of service were relevant to the determination of whether Illinois Power's proposal would convenience the public.

The Commission found from the evidence that the electric transmission lines of Illinois Power are, at the nearest point, approximately 75 miles from the lines of CIPS; that the Mt. Carmel service area in Illinois is bordered on three sides by the service area of CIPS and that the electric systems of CIPS and Mt. Carmel are integrated; that Illinois Power would establish a district office in the Mt. Carmel service area if the petition were approved but that CIPS already had 52 employees within 15 miles of the Mt. Carmel service area, which would allow for a quicker response to service needs. The Commission made a finding that electric service facility planning would be simpler under CIPS because of its history of integration with Mt. Carmel and its extensive experience in the planning and operation of the Mt. Carmel system.

The legislature has directed the Commission under section 27 to "impose such conditions as will protect the interest of minority and preferred stockholders." (Ill.

Rev. Stat. 1981, ch. 111⅔, par. 27.) It was undisputed that the president of Mt. Carmel and members of his family controlled 60% of the Mt. Carmel voting stock. The evidence before the Commission was that CIPS's offer based on an exchange of common stock was refused by Mt. Carmel and that Illinois Power's offer valuated on the same basis was acceptable. There was also evidence that the president of Mt. Carmel did not inform the board of directors or the minority shareholders in Mt. Carmel that CIPS submitted a revised proposal based, to quote from the Commission's order, "on a substantially higher valuation" than its first offer. Too, there was evidence that the president of Mt. Carmel expressed his intention not to enter into a merger agreement with another utility until every effort to merge with Illinois Power had been exhausted.

The Commission made findings favorable to CIPS concerning the interests of the ratepayers, or customers, of Mt. Carmel and the incremental cost of service. Both Illinois Power and CIPS had submitted comparative analyses of projected rates. Each study formed different conclusions, which the Commission attributed to differences in some of the underlying assumptions used by the two companies in forecasting future revenues. However, the Commission found it significant that the comparison of electric rates made by both utilities included the assumption that Illinois Power's nuclear generating unit under construction in Clinton, Illinois, would be in service by September 1983. The nuclear generating unit was not, in fact, completed by that time and, subsequent to the close of evidence in hearings before the Commission, Illinois Power announced that the facility in Clinton would not be operable until August 1984, at an increased cost to Illinois Power of $351 million. The Commission determined "a cost increase of this magnitude could increase Illinois Power's electric revenue requirement by

approximately $75 million annually over the projections introduced in this case." CIPS, on the other hand, would not have this additional production cost as it was found to be "near completion on the construction of the last generating unit that it plans to build in this decade," and the cost of this last unit was included in the revenue projections submitted by CIPS. The Commission concluded from this that the electric rates of Illinois Power were likely to be higher than those of CIPS during the period included in its projections. The Commission also found from the evidence that CIPS had lower gas rates than Illinois Power and that it was likely that CIPS would have lower gas rates "in the foreseeable future."

From the record on this appeal we must conclude that the finding of the Commission that the public convenience would not be served by the merger of Illinois Power with Mt. Carmel was not contrary to the manifest weight of the evidence. *Rural Electric Convenience Cooperative Co. v. Illinois Commerce Com.* (1979), 75 Ill. 2d 142; *Citizens Utilities Co. v. Illinois Commerce Com.* (1971), 50 Ill. 2d 35.

For the reasons given, the judgment of the appellate court is reversed and the judgment of the circuit court of Wabash County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*